In re Estate of EMILY EVANS, Deceased; GEORGE W. EVANS, Appellant, v. McDANIEL et al., Respondents.

St. Louis Court of Appeals, March 27, 1906.

1. HUSBAND AND WIFE: Administration: Parol Evidence to Explain Written Contract. On a hearing of an application by the surviving husband to administer on his wife's estate, evidence of his having managed his wife's property during the marriage, in explanation of an antenuptial marriage contract which was unambiguous in its terms, was properly excluded.

2. ———: Administration by Surviving Husband: Waiver of Right. The right of a surviving husband to priority in admin-

In re Estate of Evans.

istering on his deceased wife's estate, under section 7, Revised Statutes 1899, may be waived by him.

3. ——: ——: ——. Where the husband signed an antenuptial contract providing that he should not claim or control any of the property of his wife during her life or after her death, this was a waiver of his right to administer on her estate.

Appeal from Greene Circuit Court.—*Hon. James T. Neville,* Judge.

AFFIRMED.

*G. G. Lydy* for appellant.

(1) Under the statute appellant, as surviving husband, has the first right to the appointment as administrator, he having made application within thirty days of the death of deceased. The antenuptial contract does not refer to or contemplate the matter of administration upon the estate of Mrs. Evans. The right to administer cannot be taken away by implication, but the statute expressly requires, before this can be done, that the person or persons entitled to preference file their renunciation thereof, in writing, with the clerk of the court. R. S. 1899, secs. 7, 8, 9; Skelly v. Veerkamp, 30 Mo. App. 49; State v. Collier, 62 Mo. App. 38. (2) The statute (sec. 4340), gave to Mrs. Evans the right to hold the property mentioned in the contract as her separate property and "under her sole control." Without the contract, she would have had this "control." Yet it has been expressly held that a married woman's separate estate is administered like other estates. Grimes v. Reynolds, 94 Mo. App. 576, 68 S. W. 588; Locke v. McPherson, 163 Mo. 493, 63 S. W. 726.

*V. O. Coltrane* for respondents.

(1) The marriage contract in evidence was and is binding between the parties thereto and their legal rep-

resentatives though not acknowledged, proved or record-ed. Klenke v. Koeltze, 75 Mo. 239; Logan v. Phillips, 18 Mo. 22; R. S. 1899, sec. 4326. (2) This contract is supported by the highest consideration known to the law, and should be enforced according to the intent of the parties as expressed. Agreements of this kind are favored in law. Pratt v. Wright, 5 Mo. 192; Nowack v. Berger, 133 Mo. 39, 34 S. W. 489; Bank v. Read, 131 Mo. 553, 33 S. W. 176; Sponable v. Owens, 92 Mo. App. 174; Pruitt v. Wilson, 103 U. S. 22; McNutt v. McNutt, 2 L. R. A. 372. The agreement followed by marriage is conclusively presumed to be in consideration of marriage, and the marriage in no way affects the validity of the agreement. Snyder v. Grandstaff, 96 Va. 473, 70 Am. St. 863; Vogel v. Vogel, 22 Mo. 161. (3) The right of the surviving spouse to administer may be waived expressly or impliedly by contract in advance of the time for asserting the same. Charles v. Charles, 8 Grattan 486, 56 Am. Dec. 155; Woerner's Law of Administration (2 Ed.), sec. 235, pp. 515-517; McBreen v. McBreen, 154 Mo. 332, 55 S. W. 463; Fisher v. Clopton, 110 Mo. App. 663, 85 S. W. 623; Buffington v. Buffington, 151 Ind. 202, 51 N. E. 328; Phelps v. Phelps, 72 Ill. 545, 22 Am. Rep. 149; Overall v. Payne, 38 Mo. 209; Hammons v. Renfrow, 84 Mo. 332; Cooper v. Standley, 40 Mo. App. 138; De Hatre v. De Hatre, 50 Mo. App. 5; McLeod v. Board, 30 Tex. 238, 94 Am. Dec. 301; Pratt v. Wright, 5 Mo. 192; Maurer v. Maurer, 5 Md. 324; Fowler v. Kell, 22 Miss. 68, 14 Smedes & M. 68; In re Davis, 106 Cal. 453; Riesterer v. Land & Lumber Co., 160 Mo. 141, 61 S. W. 238. (4) Whatever else may be said of the contract it certainly provides that appellant is not to control the property of Emily Evans after her death. "Control" is synonymous with administration, management. St. Louis v. Howard, 119 Mo. 46, 27 S. W. 770; Ward v. Thompson (Md.), 6 Gill & J. 349; Gray v. Parke, 162 Mass. 582, 39 N. E. 191; Paper Co. v. Fisk, 47 Mich. 212, 10 N. W. 344, 346; Deering v. Tucker, 55 Me. 283,

288; Woodward v. Woodward, 148 Mo. 248, 49 S. W. 1001; Polson v. Stewart, 167 Mass. 211, 57 Am. St. 452.

BLAND, P. J.—In contemplation of marriage, Emily Smith and George W. Evans, on October 8, 1903, entered into the following contract in writing:

### "ARTICLE OF AGREEMENT.

"By and between G. W. Evans, party of the first part, of the county of Greene and the State of Missouri, and Emily Smith, of the county and State aforesaid. In consideration of their agreement to marry, said party of the first part agrees and binds himself to not control or claim any of her property, real estate, money or personal property, during her life or after her death. The said Emily Smith to control and buy, sell or loan the same as if no marriage had taken place. And the said G. W. Evans also agrees to sign any papers necessary for the said Emily Smith to transact her business. That if said marriage shall take effect, the said Emily Smith have full control of her property the same as a single woman henceforth and forever.

"EMILY SMITH,
"GEORGE W. EVANS."

After executing the contract, the parties were thereafter married, in Green county, and continued to live together in said county until about May 29, 1905, when Emily Evans, formerly Emily Smith, died intestate. On January 2, 1905, George W. Evans made an application to the probate court of Greene county for letters of administration on the estate of his deceased wife. The application is as follows (omitting caption):

"George W. Evans, being duly sworn, upon his oath says that Emily Evans, late of Greene county, died at Springfield, in said county, on or about the twenty-ninth day of May, 1905, intestate, and the following are the names and places of residence of the heirs of the de-

ceased to the best of his knowledge and belief: Theodore Crandall, Minovia, California, who is a brother of said deceased. That said deceased left no children and no children of any deceased child and no other heir. That affiant was the husband of said deceased at time of her death.

"That he will make a perfect inventory of and faithfully administer all the estate of the deceased and pay the debts as far as the assets will extend and the law direct and account for and pay all assets which shall come to his possession or knowledge.

"GEORGE W. EVANS.

"Subscribed and sworn to before me this second day of June, 1905.　"LOTTIE D'ALRYMPLE,

"Probate Clerk."

Theodore Crandall, a brother and the only heir at law of Emily Evans, appeared and opposed the granting of letters to George Evans and filed the antenuptial contract with the court. The probate court refused to grant letters to Evans and thereafter granted letters to H. B. McDaniel. Evans appealed, from the order refusing to grant him letters, to the circuit court, where on a hearing anew the circuit court held that by the antenuptial agreement, Evans had waived his statutory right to administer and denied his application and affirmed the judgment of the probate court. After unavailing motion for new trial, Evans appealed to this court.

After hearing the evidence, the circuit court made the following finding of facts, which it is admitted is true and correct, to-wit:

"It is admitted that G. W. Evans and Emily Evans, the deceased, were husband and wife at the time of her death, and that he applied for letters of administration on her estate, and same was overruled, and that H. B. McDaniel was appointed administrator.

"Defendant offered in evidence the antenuptial contract between George W. Evans and Emily Smith, which

is admitted to be genuine by the parties, but which plaintiff objected to because irrelevant, incompetent and immaterial to show any waiver of the said George W. Evans to the granting of letters. Said contract was admitted in evidence over plaintiff's objections, to which plaintiff then and there duly excepted at the time.

"It is further admitted by the parties hereto that said parties were able to contract at the time of making said antenuptial agreement and that Emily Smith had then reached such an age as to render issue impossible, and that they afterwards married with said contract in existence.

"Said George W. Evans, by his attorney, thereupon offered to prove that after said marriage said Evans was attending to her business as her agent, loaning her money and transacting all her business matters in reference to her property, both before and after their marriage as her agent.

"Defendant objected to the foregoing offer of proof because irrelevant and incompetent, which objections were by the court sustained, to which ruling the plaintiff then and there duly excepted at the time.

"It is also admitted that during the pendency of the trial in the probate court this antenuptial contract was exhibited to the court and was afterwards left with him and returned by him with the papers in this case to this court, and bears his filing mark of the same date that the appeal was granted.

"That plaintiff asked the court to declare the law to be that plaintiff was under the evidence entitled to be appointed administrator of the estate of Emily Evans, deceased, and the court refused the same, to which ruling plaintiff then and there excepted."

1. That Evans managed his wife's property, as her authorized agent, both before and after their marriage, did not prove or tend to prove any issue in the case. The evidence could have been offered for no purpose other than to show in what light the parties regarded

the antenuptial contract. It was incompetent for this purpose, for the reason the contract is unambiguous and speaks for itself.

2. As husband of his deceased wife, Evans was entitled to priority in administering on her estate (R. S. 1899, sec. 7) and as he did not renounce his priority after the decease of his wife, but on the contrary made timely application for letters of administration, it is contended that the court erred in refusing his request. The priority given by the statute is not an absolute but a personal right that the spouse may waive as well before marriage as after the death of the other spouse; and the remaining question for decision is, whether or not Evans waived his priority by the antenuptial contract. By that contract, in consideration of marriage, Evans, bound himself not to control or claim any of the property belonging to his intended wife, during her lifetime or after her death; in other words, he agreed not only to never claim any of his wife's property, but to forever keep his hands off it. The syntax of the term "control" is "to restrain, rule, govern, manage, guide, regulate, hinder, direct, curb, counteract, subdue." [Webster.] A person who has the administration of an estate necessarily has the management and control of the personal assets of such estate, therefore, if Evans should be appointed administrator of his wife's estate, he would have the management and control of the personal property left by his deceased wife, the very thing he agreed not to do by the antenuptial contract, and we conclude that he waived his statutory right of priority to administer, and affirm the judgment. All concur. *Goode, J.,* doubts if an appeal lies, but concurs, as if it does the result would be the same.