REBECCA LOTH et al., Appellants, v. CITY OF ST. LOUIS et al.

Division One, April 13, 1914.

1. **STREET IMPROVEMENT: Reasons for Overriding Remonstrance.** Where the charter provides that, in case a remonstrance to the street improvement signed by the owners of of the major part of the area of the land made taxable for the improvement is timely filed with the Board of Public

Improvements, the board shall consider such remonstrance, and if the board shall nevertheless, by a two-thirds vote, approve the improvement, they shall cause an ordinance to be prepared and report the same, 'with the reasons for their action," to the Municipal Assembly, the board need give no. other "reason" for their action than that "the public interests demand this improvement." No better reason could be assigned.

2. ————: *Inequality of Assessment: Unconstitutional Charter Provision.* For the reasons stated in Gilsonite Co. v. St. Louis Fair Association, 231 Mo. 589, the provision of the charter of St. Louis that the area to be taxed with the cost of a street improvement shall be ascertained by drawing a line midway between the street to be improved and the next parallel or converging street on each side, except that, if the property adjoining the street to be improved is divided into lots, the district line shall be so drawn as to include the entire depth of all lots fronting on the street to be improved, is not invalid, as violating the due process of law or as denying the equal protection of the laws guaranteed by the State or Federal Constitution, even though, in the exceptional case, there be no parallel or converging street to the one to be improved, and the lots on one side are 1250 feet deep and those on the other are only 150 feet, and the assessments of benefits and costs, according to that charter rule, would work marked inequality per front foot.

Appeal from St. Louis City Circuit Court.—*Hon. W. B. Homer,* Judge.

AFFIRMED.

*David Goldsmith* for appellants.

(1) The ordinance for the reconstruction of the Old Manchester Road was invalid, because the requirements of the charter of the city of St. Louis were not complied with in the enactment of the ordinance, in that no valid or sufficient reason for the ordinance in opposition to the majority remonstrance, was assigned by the Board of Public Improvements. Charter of St. Louis, art. 6, sec. 14; State ex rel. v. St. Louis, 161 Mo. 378; Sedalia v. Scott, 104 Mo. App. 604; Tobacco Co. v. Railroad, 174 S. W. 553; State ex rel.

v. Birch, 186 Mo. 219; State v. Butler, 178 Mo. 314;
1 Page & Jones on Taxation by Assessment, sec. 229;
Norwood v. Baker, 172 U. S. 269. In fact that reason
was an illegal reason. Mayor v. Moore, 6 H. & J.
(Md.) 375; Burns v. Mayor, 48 Md. 198; Mayor v.
Hanson, 61 Md. 462. (2) The provisions of the char-
ter of the city of St. Louis for local assessments for
street improvements violate the Constitution of this
State and the Federal Constitution, (a) because of
the gross inequalities resulting from the charter pro-
visions. People v. Salem, 20 Mich. 474; Hyattsville
v. Smith, 105 Md. 322; Davidson v. New Orleans, 96
U. S. 108; Hagar v. Reclamation District, 111 U. S.
708; Independence v. Gates, 110 Mo. 382; Fulkerson
v. Bristol, 105 Va. 561; Preston v. Roberts, 12 Bush,
585; State v. District Court, 33 Minn. 245; Allen v.
Drew, 44 Vt. 174. (b) Because those provisions con-
stitute a denial of the equal protection of the law,
contrary to the Fourteenth Amendment to the Federal
Constitution, and also constitute special legislation
contrary to article 4, section 53, and article 10, section
3, of the Constitution of this State. In re Flukes, 157
Mo. 132; Conolly v. Pipe Co., 184 U. S. 560; Railroad
v. Ellis, 165 U. S. 150.

*William E. Baird* and *Truman P. Young* for re-
spondents.

(1) The Board of Public Improvements had the
right to recommend the ordinance for passage, in spite
of the remonstrance, and the reason given by it for
recommending the ordinance was sufficient. It was
not necessary that they should have given as their
reason that the improvement would enhance the value
of private property. The board could only consider
the public interests. Meier v. St. Louis, 180 Mo. 408;
Prior v. Buehler, 170 Mo. 439; Construction Co. v.

257 Mo. 26

Railroad, 206 Mo. 179; Heman v. Allen, 156 Mo. 534; Miller v. Anheuser, 2 Mo. App. 168; Sheehan v. Martin, 10 Mo. App. 285; Eyermann v. Provenchere, 15 Mo. App. 270; Joplin v. Hollingshead, 123 Mo. App. 602; Heman v. Schulte, 166 Mo. 409; Johnson v. Duer, 115 Mo. 366; Eyermann v. Blakesley, 78 Mo. 150; St. Louis v. Wright Contr. Co., 202 Mo. 462; Railroad v. Pav. Co., 197 U. S. 433; French v. Pav. Co., 181 U. S. 324. (2) The reason given by the board for recommending the improvement was sufficiently specific and definite. It was not necessary for the board to set out in detail all of the facts and circumstances surrounding the street in question, nor all of the matters necessarily considered by the board in deciding that the public interests demanded the improvement. The decision of the municipal authorities in such a case is conclusive. McCormack v. Patchin, 53 Mo. 36; Simpson v. Kansas City, 111 Mo. 237; State ex rel. v. Engelman, 106 Mo. 628; Heman v. Frank, 99 Mo. App. 348; Skinker v. Heman, 148 Mo. 358; Johnson v. Duer, 115 Mo. 366; Miller v. Anheuser, 2 Mo. App. 168; Field v. Asphalt Pav. Co., 194 U. S. 624. (3) The constitutionality of the provisions of the St. Louis charter for the improvement and reconstruction of streets has already been passed upon. Those provisions have been uniformly sustained. Gilsonite Co. v. Fair Assn., 231 Mo. 589; Collier Estate v. Pav. Co., 180 Mo. 362; Fruin-Bambrick Co. v. Shovel Co., 211 Mo. 524; Meier v. St. Louis, 180 Mo. 391.

WOODSON, P. J.—This suit was instituted in the circuit court of the city of St. Louis by the plaintiffs to enjoin the defendants from improving Old Manchester Road between Kingshighway Boulevard and January Avenue, in pursuance to a certain ordinance duly recommended by the Board of Public Improvements and enacted by the Municipal Assembly of said city, fully authorized by the charter thereof.

The trial resulted in a judgment for the defendants and a dismissal of plaintiffs' bill. In due time and in proper form the cause was appealed to this court.

The facts of the case are practically undisputed; consequently only questions of law are here presented for determination; and judging from the record that this is a test case for the *Greatest Of All Courts* (on Earth in my opinion) that of the Supreme Court of the United States to finally pass upon, I will accept substantially the statement of the case made by counsel for appellants, which is as follows:

"The plaintiffs base their claim to the relief sought upon two grounds. One of these is that the provisions of the charter of the city of St. Louis were not complied with in the enactment of the ordinance, and the other is that the provisions of the charter of the city of St. Louis for the improvement of streets are in conflict both with the Constitution of this State and the Constitution of the United States.

"With regard to the first of these two grounds the substantial facts appear from the pleadings. The charter of the city of St. Louis provides (article 6, section 14) that no ordinance for the construction or reconstruction of any street shall be passed, unless recommended by the Board of Public Improvements; that the board shall designate a day on which they will hold a public meeting to consider the improvement, and shall give two weeks' public notice by advertisement in the papers doing the city printing of the time, place and matter to be considered; that if, within fifteen days after such public meeting, the owners of the major part of the area of the land made taxable for the improvement shall file in the office of the board their written remonstrance against the proposed improvement, the board shall consider such remonstrance, and if the board shall, by a two-thirds vote, at a regular meeting, approve of the improvement, they shall cause an

ordinance for the same to be prepared and report the same, with the reasons for their action, and the remonstrance, to the Municipal Assembly.

"The petition in this case alleges that the ordinance for the improvement in question was enacted in October, 1907; that prior to the enactment of the ordinance, namely, on February 8, 1907, the Board of Public Improvements held a public meeting to consider the improvement; that, within fifteen days after that meeting, the owners of the major part of the area taxable for the improvements filed in the office of the Board of Public Improvements their written remonstrance against the improvement, and that the plaintiffs joined in that remonstrance, and constituted a part of the owners who filed the same; that, notwithstanding that remonstrance, the board approved of the improvement by a unanimous vote of all its members, and caused the ordinance to be prepared and reported to the Municipal Assembly, with the remonstrance, and also transmitted to the Assembly, with the draft of the ordinance, a communication which was as follows (formal parts omitted) :

" 'Gentlemen:—

" 'I have the honor to report that the Board of Public Improvements has adopted the drafts of ordinance hereinafter named, and respectfully recommends the same for passage by the Municipal Assembly.

" 'It is forwarded to your honorable body through the House of Delegates, and is entitled as follows, to-wit:

" 'An ordinance to improve Old Manchester Road between King's Highway Boulevard and January Avenue.

" 'Accompanying the above-named ordinance are written remonstrances of the owners of the major part of the property on the line of the proposed improvements, and I am instructed to say that the Board of Public Improvements, having considered said remon-

strances, is nevertheless of the opinion that the public interests demand this improvement and that it recommends the ordinance above-named for passage by a unanimous vote of all members present.'

"The petition further alleges that this communication and the remonstrance were the only papers reported or transmitted by the board to the Municipal Assembly in connection with the ordinance, and that the board did not, except as aforesaid, at any time report to the Municipal Assembly its reason for its action approving the said improvement; and that the reason for the action of the board as stated in the aforesaid communication, namely, that the public interests demanded the improvement, was the only reason which caused the board to approve the improvement, or to prepare the ordinance, or to report the same to the Municipal Assembly.

"The petition also shows that this suit was filed before bids were taken for the improvement by the Board of Public Improvements, the members of which, together with the city of St. Louis, are made parties defendant in this case; that the Fruin-Bambrick Construction Company, who is the only other defendant besides the city of St. Louis, and the members of the board, was awarded the contract for the work, but that the original petition in this suit was served upon all of the defendants, with the exception of the Fruin-Bambrick Construction Company, before the bids were opened; that, before the contract for the work was entered into the Fruin-Bambrick Construction Company had full knowledge of the institution of this suit, and of the matters and things set forth in the petition, and that it entered into the contract with that knowledge; and that, up to the time of the filing of the amended petition, nothing had been done by the Fruin-Bambrick Construction Company in the execution of or under the contract.

"One answer was filed on behalf of the Fruin-Bambrick Construction Company and another on behalf of the remaining defendants; but both these answers are similar in substance, and they substantially admit all of the aforesaid allegations of the petition.

"With regard to the second ground upon which the plaintiff's seek relief in this cause, it appears from the petition that the plaintiffs are the owners of a large tract of land having a front of 1350 feet on the Old Manchester Road, and also on the improvement provided for by the ordinance in question; that, prior to the report of the ordinance to the Municipal Assembly, the Board of Pubic Improvements adopted a tabular statement estimating the cost of the improvements provided for by the ordinance at $58,110; that the total length of the improvement is 5162 feet, and that the aggregate front of all property fronting thereon on either side is over 10,000 feet; that the front of the tract of the plaintiffs is less than one-seventh of the aggregate frontage, but that if the improvement should be made and the cost thereof should be assessed upon the property included in the district according to a plat thereof approved by the board, the property of the plaintiffs would be assessed for the improvement to the extent of one-fourth of the total cost of the improvement. These facts also were admitted by the defendants by their respective answers, excepting that these answers allege the total length of the improvement to be 5162 feet, the aggregate frontage of the property on either side to be 8876.54 feet, and the frontage of the plaintiffs' tract to be 1392.25 feet, or about one-sixth of the aggregate frontage. The answers specifically admit that, if the cost for the improvement should be assessed upon the property in accordance with the plat approved by the board, the property of the plaintiffs would be assessed for the improvement to the extent of one-fourth of the total cost thereof.

''The petition herein also contains the allegations hereinafter alluded to.

''At the trial the following occurred:

'' 'Plaintiffs, to sustain the issues upon their part, offered and introduced the following evidence:

'' 'Mr. Goldsmith: I desire to offer evidence to substantiate the allegations made in the second amended petition with respect to the unconstitutionality of the charter provision, being the allegations beginning at the top of page eight of the petition and continuing from there on and including next to the last paragraph on page eleven. Which said allegations are in words and figures as follows:

'' ' ''Plaintiffs further show and state that the aforesaid ordinance, after providing for the aforesaid improvement, further provides that the total cost of the work and all proper connections and intersections required should be ascertained, levied and assessed as a special tax upon all the property within a district defined and bounded by section 14 of article 6 of the charter of the city of St. Louis; that said section 14 of article 6 of said charter provides that all districts for the assessment of special taxes for the improvement of streets shall be established as follows:

'' ' '' 'A line shall be drawn midway between the street to be improved and the next parallel or converging street on each side of the street to be improved, which line shall be the boundary of the district, except as hereinafter provided, namely: If the property adjoining the street to be improved is divided into lots, the district line shall be so drawn as to include the entire depth of all lots fronting on the street to be improved. If the line drawn midway as above described would divide any lot lengthwise or approximately lengthwise, and the average distance from the midway line so drawn to the nearer boundary line of the lot is less than twenty-five feet, the district line shall in such case diverge to and follow the said nearer boundary

line. If there is no parallel or converging street on either side of the street improved, the district lines shall be drawn three hundred feet from and parallel to the street to be improved; but if there be a parallel or converging street on one side of the street to be improved to fix and locate the district line, then the district line on the other side shall be drawn parallel to the street to be improved and at the average distance of the opposite district line so fixed and located.'

" ' "Plaintiffs further state that the Columbia Bottom Road is a street in said city of St. Louis; that there is not, and at the time of the adoption of the aforesaid provisions of said charter there was not, and that at no time since the time of said adoption has there been, in said city, any street parallel or converging to said Columbia Bottom Road; that there are, and at the time of the adoption of the aforesaid provisions of said charter there were, adjacent to the western limit of said city of St. Louis, some streets on the east thereof, but no parallel or converging street between it and said western limit of said city, and there was and is in every case a parallel or converging street on the eastern side of the street; that each and every of the aforesaid streets as to which this is or was at said time the case, is, and at said time was, less than five hundred feet eastwardly of said western limit of said city, and that some of said streets are much less, to-wit, less than two hundred and fifty feet, eastwardly of said western limit of said city.

" ' "That the aforesaid Columbia Bottom Road is the only street in said City of St. Louis, and at the time of the adoption of the aforesaid provisions of said charter was the only street in said city, having no parallel or converging street on either side thereof; and that the aforesaid streets adjacent to the western limit of said city of St. Louis are, and at the time of the adoption of the aforesaid provisions of said charter were, the only streets of said city having a parallel

or converging street on one side thereof, but not on the other; that the exception made as aforesaid by said provisions of said charter with respect to the improvement of streets having no parallel or converging street on either side thereof, and also the aforesaid exception made by the aforesaid provisions of said charter with respect to the improvement of a street having a parallel or converging street on the one side, but not on the other are, and at the time of the adoption of said provisions of said charter were, arbitrary, unjust and oppressive, and constituted and still constitute class legislation.

" ' "That the reason for the aforesaid exceptions applies and at the time of the adoption of said provisions of said charter applied to many other streets of said city than those above specified, and to the land fronting upon such other streets, and so apply, and at said, time applied, not only with the same force but moreover with far greater force and cogency than to the aforesaid Columbia Bottom Road and said streets adjacent to said western limit of said city.

" ' "That the distance between said Columbia Bottom Road and the limits of the city of St. Louis on either side thereof is small, being not over six hundred feet, and the distance between the aforesaid streets adjacent thereto is also small, being in no case as much as five hundred feet; that there are, and at the time of the adoption of said provisions of said charter there were, many other unimproved streets in said city having no parallel or converging street within a distance of two thousand feet of either side thereof, and also many unimproved streets having a parallel or converging street within three hundred feet on the one side, but not within five thousand feet on the other side; and also many other streets which for a part of their course have, and at the time of the adoption of said provisions of said charter had, a parallel or converging street on one side, which was less than three hundred feet dis-

tant, but for the remainder of their course, have, and at said time had, no parallel or converging street within a distance of five thousand feet; that in consequence of the said conditions existing at the time of the adoption of said provisions of said charter, and still existing, the aforesaid provisions require assessments for the improvement of streets which are grossly disproportionate, arbitrary and unfair, and confiscatory of property against which they are made, and which place upon a small part of the property benefited by the improvement of a street nearly the entire cost of the improvement of the street; and that this was the case at the time of, and has been the case ever since the time of, the adoption of the aforesaid provisions of said charter, and that this is the case with respect to the improvement provided for by said ordinance and the aforesaid land of these plaintiffs; that the property owned by these plaintiffs as aforesaid is a large unsubdivided tract of land containing over twenty-two acres, and having a depth of over twelve hundred and fifty feet between the north line of said Old Manchester Road on which it fronts and the next parallel or converging street northwardly of said Old Manchester Road, to-wit, Bischoff Avenue, while for the greater part of the remainder of said Old Manchester Road between said Kingshighway Boulevard and said January Avenue, the distance between said Old Manchester Road and the next parallel or converging street on either side thereof, is less than three hundred feet, and for a great part of said remainder said distance is less than one hundred and fifty feet.

" ' "And plaintiffs further state that the aforesaid provisions of said charter of said city of St. Louis are illegal and contrary to the provisions of the Fourteenth Amendment of the Constitution of the United States in that they provide for the taking of property without due process of law, and further in that they deny to persons within the jurisdiction of the State of

Missouri, and also to persons within the jurisdiction of the said city of St. Louis, and particularly to such persons owning land in said city, including these plaintiffs, the equal protection of the law; and that the same are also contrary to and in conflict with the provisions of the Constitution of the State of Missouri, and particularly section 10 of article 2 thereof, and section 30 of said article 2, and section 21 of said article 2, and furthermore, section 23 of article 9 of said Constitution of said State.' ''

''This evidence was objected to by all the defendants other than the Fruin-Bambrick Construction Company as incompetent and irrelevant; said objection was sustained by the court and the plaintiffs duly excepted to said action of the court in sustaining said objection.

''Furthermore, at the trial, the plaintiffs again tried to establish the allegations of the petition, to which we have referred, by the testimony of Joseph Pasquier, Assessor of Special Taxes of the city of St. Louis for twenty-seven years, but this evidence was excluded on objection on the ground that the constitutionality of the charter provisions had been determined by this court, and that it was a closed question.

''From the answers of all the defendants in this cause it appears that the city of St. Louis owned a large tract of land which was partly situated in the assessment district, and on which the Female Hospital of the city of St. Louis was located; and that of the estimated total cost of the street improvement, namely, $58,110, $9489 was chargeable against that property of the city of St. Louis, so that the part of the city property within the assessment district must have been about one-sixth of the entire district. At the trial it was further admitted that this tract belonged to the city at the time of the enactment of the ordinance.''

I.   As previously indicated, the questions of fact have been eliminated and there are but two legal propositions presented for determination. The first is thus stated by counsel for appellants:

"The ordinance for the reconstruction of Old Manchester Road was invalid because the requirements of the charter of the city of St. Louis were not complied with in the enactment of the ordinance, in that no valid or sufficient reason for the ordinance, in opposition to the majority remonstrance, was assigned by the Board of Public Improvements."

By this contention counsel insist that the reason assigned by the Board of Public Improvements, for overriding the protest of the majority remonstrance, is not sufficient to satisfy the charter provision mentioned.

By consulting the statement of the case made by counsel for appellant, it will be seen that the Board of Public Improvements is in no manner hampered or restricted as to the reasons to be assigned for their refusal to follow the protest of the property owners.  It simply provides that in case the board does not agree to the protest, then they may, notwithstanding the protest, recommend the passage of the ordinance, "with the reasons for their action."

The word "reason" as applied to business and municipal matters, has as many meanings as there are men engaged in business and governmental officers; and what would be a good or valid reason for the action of one man might be nonsense to another.

Returning to the case in hand: The Board of Public Improvements assigned the following reason for overriding or repudiating the protest filed by the property owners, viz.:

"The Board of Public Improvements having considered said remonstrance, is nevertheless of the opin-

ion that the public interests demand this improvement, and that it recommends the ordinance above mentioned for passage by a unanimous vote of all members present.''

It seems to me that in dealing with public matters entrusted to public officers, that the reason assigned by the board was about the best that could have been made, and referred to the council. In my opinion no other reason should have entered into the minds of, or should have influenced the action of the board, except the public good; and the mere fact that they stated that reason in plain and terse language should not detract from the force and validity thereof.

In my opinion, there is no merit whatever in this contention of counsel for appellant; and it should be and is disallowed.

II. The second proposition presented for determination by counsel for appellants is couched in this language:

.''Because those provisions (of the charter) constitute a denial of the equal protection of the law, contrary to the Fourteenth Amendment to the Federal Constitution, and also constitute special legislation contrary to article 4, section 53, and article 10, section 3, of the Constitution of this State.

These propositions were fully presented by same counsel here in the case of Gilsonite Co. v. St. Louis Fair Association, 231 Mo. 589, and were by a majority of the members of this court decided against the position there and here taken by counsel for appellant.

While I do not contend that there is any rule by which exact justice and equality of taxation can be measured out to each and all, in the assessment of special or general taxes, yet I am firmly of the opinion that no court should lend its assent to the great inequality, unjust and oppressive results that are characterized by the ruling of this court in the cases of Gilsonite Co.

v. St. Louis Fair Association, supra; Corrigan v. Kansas City, 211 Mo. 608; and in the case at bar.

While I have not changed my views of the law as expressed in those cases, yet I feel that no good can come from continual dissents; they have a tendency to disturb, if not to unsettle the law of the State, which should be as clear and placid as the sea without a ripple.

Entertaining these views I am of the opinion that the judgment of the circuit court should be affirmed; and it is so ordered.

*Graves, J.,* concurs; *Lamm, J.,* concurs in everything except what is said regarding the Corrigan and Gilsonite cases; *Bond, J.,* not sitting.