THE STATE ex rel. FRANK N. ABERCROMBIE v.
CHARLES W. HOLTCAMP, Judge of Probate
Court, Appellant.

Division Two, March 31. 1916.

1. **ADMINISTRATION: Removal Causes: Ascertainment Before Appointment.** Section 50, Revised Statutes 1909, announcing the causes for which letters testamentary or of administration may be revoked, is not to be read into and made a part of section 14, which designates persons who cannot qualify as executor or administrator. The probate court cannot refuse to appoint an executor named in the will on the ground that such person if appointed could be removed for the causes mentioned in section 50.

2. ———: **Executor: Renunciation.** The person named as executor in a will may renounce his right to be appointed, either by an express renunciation, or by acts and conduct *in pais.*

3. ———: ———: ———: **Determination a Judicial Matter.** The probate court must determine from the facts whether the person nominated executor in the will has renounced his right to be appointed, and in doing so exercises a judicial function; his act must not be arbitrary, or an abuse of power, or wholly unsupported by facts showing a renunciation; but if such facts are present, the appointment of another cannot be annulled by mandamus brought by the named executor to compel his appointment.

4. ———: **Title to Estate: Domiciliary and Ancillary Executor.** The executor who has duly qualified in the domiciliary juris- diction succeeds to the title of all testator's estate, wherever situated, and continues to hold such title until an ancillary administrator is appointed, whereupon the title to the estate in the ancillary jurisdiction vests in the latter.

5. ———: **Executor: Acts of Renunciation: Recall.** Testator died in Ohio, leaving a will which named relator and two women as executors. All qualified in Ohio, but within a few days relator filed his resignation, which was accepted. He did not qualify in the Missouri city in which he lived and where the most of testator's property was situate. He also immedi- ately resigned as director of the corporation in which testator's Missouri assets were principally invested, and avowedly severed all relations with the management and preservation of the estate, and did other things which tended to establish a re- nunciation *in pais*. *Held*, that the probate court did not act arbitrarily, in holding relator had renounced his rights under the will and in appointing another administrator with the will annexed; and the renunciation being complete, it could not be recalled, but was lost to relator forever.

6. **WILL: Intention as to Executors.** The rule that the expressed intention of the testator must be the guide in construing a will, applies to every part of it—to the expressed desire that a nomi- nated executor should administer the whole estate, the assets in the State where testator died and those in other States, as well as to other parts of it.

7. **ADMINISTRA TION: Executor: Renunciation of Domiciliary Right: Is Renunciation of Ancillary Right.** A resignation in the domiciliary jurisdiction by an executor named in the will who is qualified under the laws of the various jurisdictions in which the estate is located, is a renunciation of his right to administer so much of the estate as is situate in the ancillary jurisdiction in which he resides. So that where relator, a resi- dent of this State, who was named executor in the will of a testator who died in Ohio, qualified in that State and soon afterwards resigned, his resignation, there accepted, operated automatically as a renunciation of his right to administer so much of the estate as was located in this State.

Appeal from St. Louis City Circuit Court.— *Hon. George H. Shields*, Judge.

REVERSED (*with directions*).

*Jones, Hocker, Hawes & Angert* and *George B. Webster* for appellant.

(1) The circuit court was without jurisdiction to entertain mandamus because the action of the probate court was the exercise by it of a judicial function. 4 Words and Phrases, p. 3850; State ex rel. v. County Court, 227 Mo. 460; State ex rel. v. Guinotte, 113 Mo. App. 319; 1 Bouvier, 884. (2) An executor appointed under a will need not accept such appointment, but may renounce or resign his appointment at any time prior to intermeddling with the affairs of the estate or doing any act which amounts to an acceptance of the trust. Woerner's Administration, sec. 234. (a) This renunciation may result from acts *in pais*. Thornton v. Winston, 4 Leigh. 152; Solomon v. Wixon, 27 Conn. 520; Ayers v. Weed, 16 Conn. 291; Wood v. Sparks, 1 Dev. & Bat. 395. (3) Abercrombie was competent to act as executor under the will both in Ohio as regards the primary administration and in Missouri as regards the ancillary administration. Woerner's Administration, sec. 230. (4) Abercrombie had the option to accept the office of executor or to resign and renounce the same. He had not the option to accept in part and renounce in part. Having resigned or renounced his office as executor under the will, that resignation being filed in and accepted by the court administering primary administration, operated as a resignation of his office *in toto,* and not in part only. Ross v. Barclay, 18 Pa. St. 179. (5) A renunciation once made and accepted cannot be recalled. State ex rel. v. Romyne, 136 Mo. App. 658; Thornton v. Winston, 4 Leigh. 164; Wood v. Sparks, 1 Dev. & Bat. 296; Stockdale v. Conaway, 14 Md. 99; Lutz v. Mahan, 80 Md. 237; Estate of Kirtlan, 16 Cal. 161; Triplett v. Wells, Littell's Cases (Ky.), 49; Carpenter v. Jones, 44 Md. 625.

*Jeptha D. Howe* for respondent; *Marshall & Henderson* of counsel.

(1) Mandamus is the proper remedy. There is no merit in the appellant's contention that the judge of the probate court exercised judicial discretion in appointing Steininger administrator with the will annexed. The will appointed relator as executor and the probate court had no power to refuse to permit him to qualify, it being conceded that he was a resident of the State of Missouri. Flick v. Schenk, 212 Mo. 275; State ex rel. v. Guinotte, 113 Mo. App. 339; State ex rel. v. Fowler, 108 Mo. 465; State ex rel. v. Reynolds, 121 Mo. App. 699. (2) The resignation of relator as executor applied only to the administration in Ohio and did not apply, and was not intended to apply, to the right of relator to qualify as executor in Missouri. (3) Even if the resignation of relator, directed to the probate court in Ohio, should be held to apply also to Missouri, nevertheless relator had the right to retract his renunciation as to the administration in Missouri at any time before an administrator, with the will annexed, was appointed in Missouri, and this relator did, and the probate court in St. Louis had no power or jurisdiction to refuse to allow him to qualify as such executor in Missouri and no power or jurisdiction to appoint Steininger administrator with the will annexed. 1 Woerner's Am. Law of Adm., pp. 229, 230, 513; Casey v. Gardiner, 4 Bradf. 13; Robertson v. McGeoch, 11 Paige's Chan. 640; Taylor v. Tibbatts, 13 B. Mon. (Ky.) 177; Davis v. Inscoe, 84 N. C. 396; Wood v. Sparks, 1 Dev. & Bat. 389; Staunton v. Parker, 55 Hun, 60; McDonnell v. Prendergast, 3 Haag. Ecc. 216; In re Benton, 2 Hayw. & H. (U. S.) 315; 30 Fed. Cas. 18234; Thompson v. Dixon, 3 Haag. Ecc. 212; Dempsey's Estate, Tuck. (N. Y.) 51; In re True, 120 Cal. 352; Judson v. Gibbons, 5 Wend. 224;

Codding v. Newman, 3 Thomp. & C. 364; Percy v. De-Wolf, 2 R. I. 103.

REVELLE, J.—This is an appeal from a judgment of the circuit court of the city of St. Louis granting a peremptory writ of mandamus, commanding the probate judge of that city to permit relator to qualify as executor under the will of Martin Stanford Robison, deceased, and to revoke the appointment theretofore made of Edward A. Steininger as administrator with will annexed.

The material facts are as follows:

On March 24, 1911, Martin Stanford Robison, a citizen of the city of Cleveland, Ohio, died, leaving a will, in which Mrs. Sarah C. H. Robison, Mrs. Helene H. R. Britton and relator were named executors. Mrs. Robison and Mrs. Britton were at the time of the death of testator residents of the State of Ohio, while relator was then, and yet is, a resident of the State of Missouri. Immediately upon the death of the testator relator proceeded to the city of Cleveland to attend the funeral, and while there, to-wit, on March 28, 1911, the will was admitted to probate in the county of testator's residence, and relator, Mrs. Robison and Mrs. Britton duly qualified as executors. On April 6, 1911, relator filed his resignation as executor of the will, and on April 7th the probate court accepted same. Three days after the death of testator, to-wit, on March 27th, letters of administration were granted to Edward A. Steininger by the probate court of the city of St. Louis, upon the written request of the legatees named in the will, these letters going only to the ancillary administration.

It appears that the greater portion of testator's estate consisted of property located in Missouri, he being the dominant owner of the stock of a Missouri corporation owning the baseball club known as ''The

Cardinals.'' On June 19, 1911, the public administrator of the city of St. Louis filed in the probate court of that city an authenticated copy of the will, and at the same time filed his notice that he had taken charge of the estate. On the same day Edward S. Steininger, who had theretofore been granted letters of administration, also filed in the probate court of the city of St. Louis another copy of the will, whereupon a *dedimus* was issued to take the testimony of the subscribing witnesses who lived at Cleveland, Ohio. On the 29th of June relator applied to the probate court for leave to qualify as executor under the will. On July 8th Steininger filed a certified copy of the resignation of relator, which had been filed with the probate court of Ohio, said copy having been procured on April 12th. On June 20th the public administrator filed a motion in the probate court to quash the *dedimus* theretofore issued to take the testimony of the subscribing witnesses to the will; and on June 30th filed a motion to require Steininger to settle with him as administrator with will annexed. The hearing on these various applications and motions began in the probate court on July 10th, and, upon completion thereof, the probate court found, from the facts adduced in evidence, that relator had no absolute right to qualify as an executor, because he had theretofore renounced and waived such right. After so disposing of relator's claims, it appointed Steininger administrator with the will annexed.

The evidence discloses that at about the same time that relator tendered his resignation to the probate court of Ohio, he also resigned as a director in the Missouri corporation in which the testator's assets were chiefly invested. It also appears that three days after the death of testator, and before relator resigned in Ohio, he had arranged for his bond as ancillary ex-

ecutor, but after he resigned in Ohio he made no effort whatever to qualify in Missouri until the time and after the occurrences heretofore recited.

At the hearing before the probate court relator testified that some differences had arisen between him and one of the principal legatees, and that he did not desire to be in a position where it would embarrass this party, and that he therefore resigned as executor under the will and as a director of the Missouri corporation, and had entirely severed his connection with the estate. On April 10th, following his resignation on April 6th, he wrote a letter to Mrs. Robison clearly indicating his intention to have nothing further to do with the management or administration of any part of the estate.

I. At the inception we are confronted with appellant's insistence that mandamus is not a proper and available remedy, for that the action of the probate court, which the writ seeks to control, involved the exercise of both a judicial discretion and function. On the other hand, it is contended that, since the will nominated and appointed relator as executor, the duty of the court was purely ministerial, and after the probate of the will it had no authority to do other than grant letters testamentary to relator.

**Executor: Renunciation of Appointment: Recall: Mandamus.**

A determination of this question makes necessary an examination of the statutory provisions relating to wills.

Section 19, Revised Statutes 1909, provides: "After probate of any will, letters testamentary *shall* be granted to the persons *therein appointed executors* . . . If all such persons *refuse to act,* or be *disqualified,* letters of administration shall be granted to the person to whom administration would have been granted if there had been no will."

Section 14 provides that "no judge or clerk of any probate court, in his own county, or his deputy, and no male person under twenty-one years of age, or female person under eighteen years of age, or of unsound mind, shall be executor or administrator. No married woman shall be executrix or administratrix, nor shall the executor of an executor, in consequence thereof, be executor of the first testator."

Section 17 provides: "Letters testamentary and of administration may at any time be granted to any person deemed suitable *if* the person or persons *entitled to preference* filed their renunciation thereof, in writing, with the clerk of the court, or if proof be made that no such persons reside in this State."

Section 50 provides: "If any executor or administrator become of unsound mind, or be convicted of any felony or other infamous crime, or has absented himself from the State for a space of four months, or become an habitual drunkard, or in anywise incapable or unsuitable to execute the trust reposed in him, or fail to discharge his official duties, or waste or mismanage the estate, or act so as to endanger any co-executor or co-administrator, or failed to answer any citation and attachment to make settlement, the court" (upon written complaint and after notice and hearing) "shall revoke the letters granted."

It is insisted on the part of appellant that the causes announced in section 50 for which letters may be *revoked* must be incorporated and read in connection with section 14 which designates the persons who cannot be *appointed* and who cannot *qualify* as executor or administrator, and that when the probate court is called upon to grant letters testamentary it is not only its privilege but duty to judicially ascertain and determine whether any of the removal causes exist.

With this we do not agree, as it is clear that section 50 relates only to persons who have already qual-

ified, while section 14 prescribes the class of persons who can neither be appointed nor qualified. We further find from the administration laws that an appeal is allowed from orders and judgments *revoking* letters for the causes mentioned in section 50, but no such right is given in cases where letters testamentary or of administration are denied to persons lawfully thereto entitled. [Flick v. Schenk, 212 Mo. 275; Marshall v. Estate, 164 Mo. App. 429.] That relator possessed the qualifications required, and was not disqualified by reason of any of the disabilities mentioned in section 14, is conceded, and we have abundant authority in this State for giving relief by mandamus when, under such circumstances, the probate court fails to perform its plain legal duty. [State ex rel. v. Guinotte, 113 Mo. App. 399; State ex rel. v. Fowler, 108 Mo. 465; State ex rel. v. Reynolds, 121 Mo. App. 699; Flick v. Schenk, 212 Mo. 275; State ex rel. Knisely v. Holtcamp, 266 Mo. 347; State ex rel. v. Homer, 249 Mo. 58.]

We, therefore, conclude that, unless other facts appear which preclude relator from asserting his original rights to letters testamentary, such rights were absolute, and mandamus is a proper remedy to compel the probate court to grant to him such letters. [Cases supra.]

This, however, does not dispose of the subject, in so far as this case involves it, as the pleadings and evidence disclose that the refusal of the probate court to grant letters to relator was predicated upon its findings of fact, that relator had, prior to making his demand for letters, duly and completely *renounced* and *waived* his rights thereto.

The law is well-settled that, although an executor, if not disqualified by statute, has the absolute right to letters testamentary upon the probate of the will, he is not required to exercise this right or accept this position of trust and responsibility. He is free, if he so

desires, to renounce his rights thereunder, and this he can do by an express renunciation, or by acts and conduct *in pais*. [Thornton v. Winston, 4 Leigh, 152; Solomon v. Wixon, 27 Conn. 520; Ayres v. Weed, 16 Conn. 291; Wood v. Sparks, 1 Dev. & Bat. 1. c. 395.]

In case of such renunciation it becomes the duty of the probate court to appoint another, and it is clear that in performing its duty, that is, appointing the person entitled thereto, that court must determine, from the facts, whether there has been a renunciation. It may be conceded that in such a case the court cannot act arbitrarily, or abuse its power, or make a finding which is wholly unsupported; but, absent these, it cannot be gainsaid that the court, when determining this question, exercises a discretion and performs a judicial function. In the instant case we find no such arbitrary abuse of power as to warrant outside interference or the use of the extraordinary writ. The relator had duly qualified in the domiciliary jurisdiction as executor of the will, and as such, was in charge of the principal and primary administration. The law is that such an executor succeeds to the title of all of testator's estate, *wherever* situated, and continues to hold such title until an ancillary administrator is appointed, when the title to the estate in the ancillary jurisdiction vests in the latter. [13 Am. & Eng. Ency. Law, 931.]

When relator voluntarily resigned he did not state in his resignation that he was attempting to resign only in Ohio, but made it general. He followed this up by immediately resigning as a director in the corporation in which the Missouri assets were principally invested, and avowedly severed all relations with the management and preservation of the Missouri estate. He wrote a letter to Mrs. Robison clearly indicating an intention to have nothing further to do with the estate, or any part thereof. For a period of about three months, although a resident of the city where the prop-

erty was located, and well knowing that the estate was in the process of administration by another, he took no interest therein, and made no effort to file the will or qualify thereunder, and when the will was finally presented it was not by him, but by another. He had made arrangements for his bond as executor in Missouri in March, but, after resigning in Ohio, he abandoned these. He testified at the hearing, in explaining some of his actions, that his relations with the interested parties had become unfriendly and unpleasant, and that he had no desire to embarrass them by continuing his relations with the business.

In view of these facts, it cannot be reasonably said that the probate court, in determining the question as to whether relator had renounced his right, acted arbitrarily and without sufficient facts; and for this reason, if no other, the writ should be denied, unless relator is correct in his insistence that, notwithstanding he had renounced, he, nevertheless, had the right to change his mind and accept the trust at any time after the will was filed and before another person was appointed with the will annexed.

In State ex rel. v. Romjue, 136 Mo. App. 650, the Kansas City Court of Appeals held that where a person entitled to administer renounced his right thereto, it was forever lost and could not be recalled, and this notwithstanding that there was coupled with the renunciation an express condition that certain other persons should be appointed to administer. In that case the court held that this right was purely a personal privilege, and that if the members of the privileged class renounce their right, or lose it by failing to exercise it, then the duty devolves upon the probate court of selecting another. The court in that connection said (l. c. 658-9):

"We regard the renunciations filed by relators as unconditional, and pass to the question of whether rela-

State ex rel. v. Holtcamp.

tors could retract them at any time before the appointment of an administrator. In our opinion, the better doctrine is that when the privilege once is renounced or waived, it is lost forever and cannot be recalled. Two very potent reasons may be given in support of this doctrine. First, as a general rule, the estates of deceased persons demand speedy attention and injury would result from delays that might be caused if resident heirs could renounce and recall their privilege at will, and, second, the right of revocation, if it existed, might be used as was attempted in the present case, not in good faith for the purpose of enjoying the privilege, but as a club to hold over the probate court to compel it to appoint, not the persons whom the court in the exercise of its judgment found were best qualified to administer, but those whom the resident heirs favored. The doctrine just announced is abundantly, though not unanimously, sustained by the authorities. We refer to the briefs of counsel where the authorities for and against it are collated. We conclude that respondent acted within the scope of his right and duty in refusing to acknowledge the right of relators to recall their renunciations and, as the appointment made by him appears to have been the result of the exercise of sound judgment and not of an arbitrary abuse of power, we find no occasion to interfere.''

And we might add, that when the choice of the testator refuses to act, the duty of preserving the estate and the selection of another person to act becomes important and immediately necessary, and this incurs expense and trouble, a part of which would be made useless and wasteful if the vacillating person who first refused to serve, and then changed his mind, were permitted to play thus fast and loose. [Stocksdale v. Conaway, 14 Md. 99; Estate of Kirtlan, 16 Cal. 161.]

Again, in cases like the present, where a full administration had been in progress (although not under

the will) for three months, the right to revive should not exist. During that period relator stood idly by, watching others handle the laboring oar, and failing and refusing to perform the very duties which gave life to his right. To permit him to then claim his voluntarily-waived right would be to pervert the very object of his appointment and reward his dereliction. It would mean that he could accept a part of the trust, and reject the remainder, even in the same jurisdiction.

We are, therefore, of the opinion that the probate court was not only called upon to determine the legal effect of the resignation filed in Ohio, but also the question of fact as to what relator's intentions were, and how far he had renounced *in pais;* and, in this connection, it had a perfect right to weigh and consider all of relator's acts and conduct. This required the exercise of judicial discretion, and it is too well settled to even warrant the citation of authorities that such discretion cannot be controlled by mandamus.

II. In the preceding paragraph we have not directly dealt with one question which the record presents, namely: whether, under the law of administration, an executor who is qualified under the laws of the various jurisdictions in which the estate is located, can, as a matter of absolute right, accept a part of the trust and reject that which he deems undesirable; or can refuse to act in the principal jurisdiction and yet retain his absolute rights in the ancillary jurisdiction. The absolute rights of an executor to letters testamentary are derived solely from the act of the testator in naming him as such. [18 Cyc. 74, and cases cited.] The dominant object of a testator in naming a person as executor is not to bestow favor, but to impose duties—the duty of manag-

**Executor: Renunciation of Domiciliary Right a Renunciation of Ancillary Right.**

ing, directing and administering upon his estate and
carrying out his expressed wishes, and we give effect
to his nomination, not because of inherent rights in the
person nominated, but because of the expressed desire
and intention of the testator. A testator may have
good reasons for confiding his whole estate to one per-
son, and for wanting the same person to administer
upon it in its entirety, and thus have pursued one gen-
eral and harmonious policy in relation thereto. In
many cases the property and estate are of such a char-
acter that such a policy is absolutely essential to a
profitable preservation and distribution thereof. Is
it not reasonable to assume that all testators desire
this uniformity of action and administration when they
name persons as executors for all purposes, and re-
frain from naming some for one jurisdiction and others
for other jurisdictions? A testator, if capable of mak-
ing a will, knows the location of his property, its par-
ticular character, as well as the laws of the States
where located, and how he desires it handled. He se-
lects his representative with all this in mind and with
reference thereto.

In this case testator knew that a resident of this
State was legally qualified to become the legal repre-
sentative of both the principal and ancillary adminis-
tration. He named relator executor of his whole will,
not a part thereof, as he might have done had such been
his desire and intention. [Hunter v. Bryson, 25 Am.
Dec. 313; Despard v. Churchill, 53 N. Y. 192; Morde-
cai v. Boylan, 59 N. C. 365; Gibbons v. Riley, 7 Gill,
81.] In construing wills we have always said that the
expressed intention of the testator must guide and gov-
ern us, and this applies to every part of the will. It
was the expressed desire and intention of testator that
relator act as one of the legal representatives of both
the principal and ancillary administration, and we are
unwilling to hold that this intention can not only be de-

feated, but may be used for the purely personal advantage of the person defeating it. He should not be permitted to select from the trust thus imposed the things which he deems pleasurable and profitable, and reject those which may seem burdensome and unprofitable. He should accept or renounce the whole, thus giving full effect to the intention of the one who created his right. In 18 Cyc. 80, it is said: "A person nominated as an executor cannot be compelled to act as such, but the office may be accepted or refused at discretion, although one should refuse entirely or not at all."

It has been held in some jurisdictions that the right of renouncement is available only in the tribunal of the testator's domicile, and that after a person has qualified as executor in that tribunal his resignation in an ancillary jurisdiction is absolutely void. [Ross v. Barclay, 18 Pa. St. 179. See, also, Slaughter v. Garland, 40 Miss. 172; Wilson v. Cox, 49 Miss. l. c. 542; Lindsley v. Patterson, 177 S. W. l. c. 833.] This, as well as the proposition that when there is a resignation in the domiciliary jurisdiction it applies to ancillary rights, seems entirely sound. The principal administration of an estate must take place in the jurisdiction of the deceased's domicile, and to this all ancillary administration is subordinate and subservient. [18 Cyc. 67; In re Estate of Gable, 79 Iowa, 178; Spraddling & Keeton v. Pipkin, 15 Mo. l. c. 134.] The tribunal there has the exclusive power to admit the will to probate, and the right to issue letters testamentary or to receive resignations and renouncements is an incident to that jurisdiction; and when there made should operate automatically as a renouncement in all ancillary jurisdictions. We so hold.

For the reasons heretofore assigned the judgment is reversed with directions to quash the peremptory writ of mandamus. *Faris, P. J.,* and *Walker, J.,* concur.