STATE ex rel. ANNA ESTELLE SCANLAND, Relator, v. J. E. THOMPSON, JUDGE, Respondent.

St. Louis Court of Appeals, July 31, 1916.

1. **EXECUTORS AND ADMINISTRATORS: Right to Administer: Rights of Surviving Spouse.** The surviving spouse is given an unqualified right to administer upon the estate of the deceased spouse, in the first instance, by Sec. 15, R. S. 1909, unless disqualified by Sec. 14, although, under Sec. 50, the letters may be revoked after a hearing, if ground therefore exists.

2. ————: ————: ————. In view of the fact that, under section 15, R. S. 1909, a widow who is not disqualified by section 14 has the absolute right to administer upon her deceased husband's estate, the fact that she was improvident, wasteful and extravagant, had no proper appreciation of the value of money, was a woman of immoral character, whose reputation for morality was bad, was deficient in integrity and business honor, was incapable of managing the estate advantageously or properly, and was hostile to the heirs and distributees, was not sufficient to defeat her right, in the first instance, to letters of administration; distinguishing State ex rel. v. Reddish, 148 Mo. App. 715.

3. ————: ————: Renunciation: Antenuptial Contracts. The right to administer upon an estate may be renounced, and such renouncement may be effected by an antenuptial contract executed in consideration of marriage.

4. **MANDAMUS: Executors and Administrators: Renunciation of Right to Administer: Discretionary Determination.** The probate court acts judicially in determining whether or not the right to administer upon an estate has been renounced by one of those entitled to priority, and, in the absence of an abuse of discretion, its action may not be reviewed or interfered with by mandamus; but the probate court is not permitted to act arbitrarily or abuse such discretion, and it cannot conclude the matter by a finding which is wholly unsupported by the evidence.

5. ————: ————: ————: ————. Where, in such a case, the return to an alternative writ of mandamus shows that the respondent judge found that the right to administer had been waived or renounced, and also sets forth all the facts concerning that matter, so that it affirmatively appears that the question turns entirely on a conclusion of law, the immunity from review by mandamus, which usually attends the exercise of a judicial function, does not necessarily obtain.

6. **WAIVER: Elements.** Waiver is purely a matter of intention, and such intention may only be found from facts tending to prove it.

7. **EXECUTORS AND ADMINISTRATORS: Right to Administer: Renunciation of Waiver: Antenuptial Contracts.** A marriage contract between decedent and his widow, which awarded her five thousand dollars at the time of the marriage, and two thousand dollars per year so long as she continued his wife, and thereafter "barred her from his property," did not constitute a renunciation or waiver of the widow's right to administer upon decedent's estate, since the intention to renounce, which is essential to constitute a waiver, was lacking, and there was no renunciation, as the statutory right of a widow to administer upon her deceased husband's estate is not essentially a marital right in his property, but is rather the right to perform an office, through which, after paying the debts and other charges, the estate, less commissions, is eventually turned over to the distributees.

MANDAMUS. ORIGINAL PROCEEDING.

PEREMPTORY WRIT AWARDED.

*E. L. Carwine, R. H. Norton* and *D. A. Ball* for relator.

(1) If the applicant for letters of administration on the estate of Charles B. Scanland was and is deficient and guilty of all the charges made against her by objectors, still such facts would not give the probate court, or the judge in vacation, any legal reason or legal right

to refuse applicant letters of administration, for the reason that the statute law of Missouri gives to the widow the absolute right to administer her deceased husband's estate. The probate court has no discretion in the matter. It is an absolute right given her under the law. Mullanphy v. St. Louis County Court, 6 Mo. 563; Shelly v. Veerkamp, 30 Mo. App. 49, 52-3; Hollingsworth v. Jefferies, 121 Mo. App. 660; 1 American Law of Administration, sec. 242; State ex rel., Graves v. Fowler, 108 Mo. 465, 470; State v. Collier, 62 Mo. App. 38; State v. Mitchell, 113 Mo. App. 399. (2) That a wife has been unfaithful and violated her marital obligation does not disqualify her to act as administratrix of her husband's estate. In re Newman's Estate, 124 Cal. 688. (3) The courts have no power to declare a person incompetent to act as administrator unless he is in one of of the classes declared to be incompetent by Probate Code. McClelland Estate, 27 S. Dak. 109; 28 American and English Annotated Cases, 1913C, page 1029, Decided in 1911.

*Jones & Haden, Hostetter & Haley, Pearson & Pearson* and *W. C. Hughes* for respondent.

(1) The authorities hold that sections 15 and 50, R. S. 1909 (causes for which letters may be revoked) should be construed together; that the probate court, should determine in the first instance, whether or not applicant is such a person that could be immediately removed, if appointed, and if so, he or she should not be granted letters of administration. In so determining the probate court acts judicially. State ex rel. v. Reddish, 148 Mo. App. 715; In re Estate of Evans, 117 Mo. App. 629, 635; State ex rel. v. Guinotte, 113 Mo. App. 399, 408; Stevens v. Larwill, 110 Mo. App. 140, 159. (2) If the probate court acted judicially, in denying relator's application for letters of administration on her deceased husband's estate, its act cannot be reviewed by proceedings on mandamus. State ex rel. v. Guinotte, 113 Mo. App. 399, 405; State ex rel. v. Allen, 92 Mo. 20, 24.

NORTONI, J.—This is a proceeding in mandamus originating here. The writ is directed against the Probate Court of Pike County in aid of the application of a widow to be appointed administratrix of her deceased husband's estate. Relator is the widow of Charles B. Scanland, who departed this life intestate, in Pike county on May 31, 1916, leaving a personal estate, it is said, of between $60,000 and $75,000. On the application of the widow, Anna Estelle Scanland, to the probate court for letters of administration on her deceased husband's estate, certain collateral heirs of Scanland objected, and the court set the matter down for a hearing. Judgment is invoked by motion on the return.

It appears from the return of the respondent, the judge of the probate court, that the court heard evidence upon the objections and denied the application of relator, in the view that the evidence revealed her to be grossly improvident, wasteful, and extravagant and that she had no proper appreciation of the value of money; that she is a woman of immoral character and her reputation for morality and chastity is bad; that she is deficient in integrity and business honor; and that, because of these facts, she is incapable of managing advantageously so large an estate and also that she is hostile to the heirs and distributees, and it is said her appointment would subject the estate to unusual hazard. Moreover, the court found and declared that prior to relator's marriage to decedent she had entered into a marriage contract with him whereby she relinquished all her right or interest in the estate of decedent. After reciting these facts in the judgment, the probate court denied relator's right to be appointed administratrix and appointed instead the public administrator of Pike county.

It is clear that none of the matters so found and declared by the court in its judgment and set up in the return are sufficient to preclude relator's right to be appointed administratrix of the estate of her deceased husband. The statute relating to the matter (section 14, R. S. 1909) is as follows:

"*Persons disqualified from administering.*—No judge or clerk of any probate court, in his own county, or his deputy, and no male person under twenty-one years of age, or female person under eighteen years of age, or of unsound mind, shall be executor or administrator. No married woman shall be executrix or administratrix, nor shall the executor of an executor, in consequence thereof, be executor of the first testator."

This section inhibits the appointment of persons therein named and it is conceded that relator is qualified to perform the office of administratrix on her husband's estate in so far as this statute is concerned, that is, she in no wise falls within any of its terms. She is the widow of the decedent and a woman of about thirty years of age. She is unmarried and of sound mind. She is neither the judge nor clerk of the probate court of the county, nor is she deputy clerk, and so far as this statute is concerned she is free to be appointed and to enjoy the valuable right incident to the office of administratrix of her husband's estate. Section 15, Revised Statutes 1909, affords an arbitrary rule on the subject, which it was within the power of the Legislature to prescribe. Therefore, unless some statutory grounds to the contrary appear, it is the duty of the court to confer the appointment upon the person whom the Legislature has nominated to have it as of right. The statute is as follows:

"*Persons entitled to priority in administering.*— Letters of administration shall be granted: First, to the husband or wife; secondly, to those who are entitled to distribution of the estate, or one or more of them, as the court or judge or clerk in vacation shall believe will best manage and preserve the estate." [Section 15, R. S. 1909.]

The right to administer on an estate is a valuable one which should not be denied to the person entitled to priority unless sound reason therefor appears. Grounds for denying the right to either the husband or wife of the deceased are set forth in the statute (section 14, supra) unless a renouncement of it appears. Indeed,

touching this the Supreme Court has said the law fixes the order of priority and the court can be compelled to follow it by writ of mandamus. [See State ex rel. Grover v. Fowler, 108 Mo. 465, 470, 18 S. W. 968; also Flick v. Schenk, 212 Mo. 275, 279, 110 S. W. 1074.] A sound reason in addition to the mandate of the statute itself for appointing the person whom the Legislature has nominated to the office is that no appeal is allowed as a means of review in such matters, and it therefore may be that a valuable right is denied without proper recourse to the injured party. [See authorities supra.] In view of this it would seem to be just that the appointment should be made in the first instance, and then, if grounds for removal exists, they should be invoked under section 50 and a full hearing had, so the usual right of appeal and review may be enjoyed.

But it is argued that section 50, Revised Statutes 1909, which provides the causes for which letters of administration may be revoked is to be considered *in pari materia* with sections 14 and 15 and the whole matter adjudicated on the application for letters in the first instance. It is true this court so declared in State ex rel. v. Reddish, 148 Mo. App. 715, 129 S. W. 53, but that case in no wise involves the right of the husband or wife of the deceased to administer on his or her estate. Rather the question arose under the second subdivision of section 15, supra, for that there the son of the decedent sought to be appointed administrator of his father's estate and it appeared that three of his brothers and sisters objected, though they renounced their own right. The adjudication was against the right of the son so applying, on the grounds that he was administrator of his mother's estate and a conflict of interest because of this appeared. It is to be observed, however, that the second subdivision of the statute (section 15, supra) essentially confers a discretion on the probate court as to whom, among the distributees of the estate, shall be appointed. The statute reads that the letters shall be granted secondly ''to those who are entitled to distribution of the estate, or one or more of them, as the

court or judge or clerk in vacation shall believe will best manage and preserve the estate.'' In considering this provision of the statute which by its very terms appears to confer a discretion on the probate court, for that it. says the appointment shall be conferred upon the distributee or distributees that the court ''shall believe will best manage and preserve the estate,'' it was declared in State ex rel. v. Reddish, supra, that the court may consider *in pari materia* with sections 14 and 15 section 50, setting forth causes for which an administrator may be removed. But under this second subdivision of the statute, as stated, there is a discretion lodged in the probate court touching the matter of the appointment, that is, in making the selection of an administrator from among the distributees. And where such discretion is to be exercised, it is well enough to take into account the grounds for removal set out in section 50.

But it is certain that the doctrine referred to may not be extended in view of the recent decision of the Supreme Court in State ex rel. Abercrombie v. Holtcamp, 257 Mo. 412, 185 S. W. 201, for there the court rejects the argument that section 50 is to be interpreted and read in connection with section 14. The facts that relator is improvident, wasteful, and extravagant and has no proper appreciation of the value of money; that she is a woman of immoral character and her reputation for morality bad; that she is deficient in integrity and business honor; that she is incapable of managing advantageously or properly so large an estate, and that she is hostile to the heirs and distributees, are not sufficient to defeat her right in the first instance to be appointed administratrix of her husband's estate in accordance with the statute, for the statute says she shall be appointed if she is the widow and a woman of sound mind not otherwise disqualified by section 14. After she is once appointed, maybe it would be competent for the court to remove her under the provisions of section 50, but that question would be open to consideration on appeal, whereas no appeal is afforded to the applicant for letters in the first instance. In this connection see the reasoning

in State ex rel. Abercrombie v. Holtcamp, 257 Mo. 412, 185 S. W. 201.

But it is argued that the probate court found as a fact that relator had entered into an antenuptial contract in consideration of marriage with her husband whereby she relinquished all right or interest in the estate of decedent and this will suffice to defeat her right to have letters of administration thereon issued to her. No one can doubt that one entitled to administer upon an estate may renounce this right, for the statute so provides. It is true too that one may renounce this right by an antenuptial contract executed in consideration of marriage, as this court declared in Evans v. McDaniel, 117 Mo. App. 629, 93 S. W. 922. In that case Evans bound himself by the marriage contract not to "control or claim" any of the property of his wife during her lifetime or after her death and the court declared that this amounted to a renunciation of his right to administer on her estate, for that the right to control her property in any wise after her death was renounced, as well the right to administer thereon.

It may be conceded that the probate court acts judicially in determining whether or not the right to administer an estate has been renounced by one of those entitled to priority and in the absence of an abuse of discretion in respect of that matter such discretion may not be reviewed or interfered with by mandamus. In other words, though a discretion be lodged in the court in determining that particular matter, it is not permitted to act arbitrarily or abuse such discretion nor conclude the matter by a finding which is wholly unsupported by the evidence, as is said in State ex rel. Abercrombie v. Holtcamp, 257 Mo. 412, 185 S. W. 201. When, therefore, it appears from the return in mandamus, as here, that the court found the right to administer was waived or renounced and sets forth all the facts concerning that matter so it affirmatively appears that the question turns entirely on a conclusion of law, the immunity from review by mandamus which usually attends the exercise of a judicial function does not necessarily obtain. Here it

appears from the return that the court found the marriage contract between decedent and relator merely awarded to the wife $5000 at the time of the marriage and $2000 per year as long as she continued his wife and thereafter "barred her from his property." Obviously this reveals no intention on her part to renounce her right as the widow to administer upon his estate. It is certain no express relinquishment appears and a waiver is purely a matter of intention. Such intention may only be found from facts tending to prove it. [See Francis v. Supreme Lodge A. O. U. W., 150 Mo. App. 347, 130 S. W. 500.] Therefore, though relator received $5000 at marriage and $2000 per year thereafter and her marital rights in the husband's property were barred after his death, this in no wise included the statutory right of the widow to administer upon the estate, for such is not essentially a marital right in his property but is rather the right to perform an office through which, after paying the debts and other proper charges, the estate is eventually turned, less commissions, over to the distributees on final settlement.

We see nothing in the return which precludes the right of relator to be appointed administratrix of her husband's estate, and the preliminary writ of mandamus should therefore, notwithstanding such return, be made absolute with a direction as well to the Probate Court of Pike County to vacate its order appointing the public administrator as administrator of the estate of Charles B. Scanland and appoint relator instead. It is so ordered. *Reynolds, P. J.*, and *Allen, J.*, concur.