BENJAMIN FISH, Defendant in Error, v. ADALINE LIGHTNER et al., Plaintiffs in Error.

1. *Partnership — Administration —Surviving partner—Partnership articles— Covenant for conveyance in — Record of final settlement — Res adjudicata — Account of profits.—* A., being the owner of certain real estate with improvements, covenanted, in articles of partnership with B., that on receipt from

B. of one-half the amount paid for the property, with interest, and half the running expenses, he would convey to him an undivided half of the property. On decease of A., B., as surviving partner, administered on the joint estate. *Held*, that the record of final settlement in the Probate Court, showing a balance of partnership payments in favor of B., was not conclusive evidence that the amount necessary to entitle him to a conveyance had been paid. It was not within the scope and purpose of final settlement to determine such questions. Such a covenant and the payments made in accordance with it were individual, and not partnership, transactions. The conveyance in such case certainly should not be enforced when no accounts were rendered by the administrator of the profits of the estate.

2. *Conveyances, contracts for — Discretion of court as to specific performance.*— Petitions for a specific performance of a contract to convey land are addressed to the sound discretion of the court, which may withhold or grant relief according to the circumstances of each particular case, when general rules and principles fail to furnish any exact measure of justice between the parties.

## *Error to First District Court.*

*Hicks*, for plaintiffs in error.

*H. C. Wallace*, and *J. J. Ryland & Son*, for defendant in error.

CURRIER, Judge; delivered the opinion of the court.

This is a chancery proceeding to enforce the specific execution of a clause in a copartnership contract contemplating the conveyance of real estate on certain specified conditions. The party thus contracting to convey having deceased, his administrator, widow, and two minor children are joined in the suit as defendants. The premises in question were acquired by the deceased with a view to their use by the firm of Lightner & Fish in carrying on the livery business in Lexington, Mo., where said premises are situated. The firm was composed of the plaintiff and said deceased, the former being the active manager of the business. It was provided in their articles of copartnership that whenever "said Fish should have paid to the said Lightner one-half of the purchase money of said property—to-wit: one-half of seventy-five hundred dollars—with ten per cent. interest thereon from March 15, 1860, until the whole is paid, and should pay one-half of the expenses of said business, and should pay for one-half of all stock

18—VOL. XLIV.

and provender necessary to carry on said business," that then said Lightner should convey to Fish one undivided half of said property. The articles of copartnership bear date March 15, 1860. Lightner died July 30, 1861. The petition avers that, prior to his death, the plaintiff had paid him one-half of said purchase money and interest, together with one-half of all the costs, charges, and expenses incident to said livery business, and that the plaintiff had performed all the conditions and stipulations of said contract obligatory upon him. The answer filed put in issue the truth of these averments. If the evidence sustains the allegations of the petition, then the relief prayed for ought to be granted; otherwise not.

The plaintiff, as surviving partner, administered upon the firm assets, and wound up the affairs of the partnership. In support of the allegations of payment, the plaintiff offered in evidence the record of proceedings of the Lafayette Probate Court on the occasion of the final settlement by the court of the plaintiff's administration account. The transcript was admitted over the defendant's objections. It shows a final settlement of the plaintiff's administration account, and an ultimate balance in his favor of $1,058.22. This, it is insisted, conclusively establishes the fact of payment as alleged in the petition; and it is undoubtedly conclusive upon all matters which were legitimately before the court and directly in issue, and which the court specifically passed upon. But was the issue raised by these pleadings before that court? Did it undertake to adjudicate the question whether Fish, prior to the death of Lightner, had paid the $3,750 and interest, so as to entitle him to a conveyance? Was it within the scope and purpose of that accounting to settle questions of this character? If not, then the question was not concluded by that settlement; for the adjudication was conclusive only for the purposes for which it was made. It did not conclude matters collaterally introduced or recited; nor did it establish the fact that any particular firm-creditor was paid, because the accounts may have contained an entry to that effect, and the court may have made an allowance to the administrator accordingly. Many things may be introduced into an administration account which do not neces-

sarily become *res adjudicata* in consequence of the judgment of the court thereon. (1 Greenl. Ev. § 528; Redf. on Wills, part II, pp. 894–5; Sparhawk v. Buel, 9 Verm. 41.) We do not consider the question litigated here to have been so involved and in issue in the proceedings before the Lafayette Probate Court, in the settlement of merely partnership matters, as to cut off all inquiry into the equitable merits of the case before us. The question contested here relates to transactions between Lightner in his lifetime, on the one side, and Fish on the other, as individuals merely, and not as partners. Their bargain in regard to the sale and conveyance of land was in no sense a partnership act. It was antecedent to the existence of the partnership, although embodied in the copartnership articles out of which the partnership sprung. A clause was incorporated in these articles whereby Lightner, on certain conditions, agreed to convey, but Fish did not therein even agree to comply with the conditions and take the property. He did not therein agree to buy at all. Lightner's contract, in this connection, was in the nature of a standing offer to sell and convey in case Fish should thereafter conclude to make, and should actually make, the required payments. Fish's subsequent action in accepting and complying with the prescribed conditions, if he did so, was purely private, personal, individual action. Whether or not he in fact made the necessary payments is a question between him, as an individual, on the one part, and Lightner or his legal representatives on the other. It is not a partnership inquiry, or necessarily connected with the partnership accounts or dealings, although payments may have been made from Fish's share of the profits.

On looking into the accounts filed with the Probate Court, constituting a part of the transcript under consideration, we fail to find any profit and loss account, or any account or statement showing the profitableness or unprofitableness of the firm-business of Lightner & Fish. There is nothing on this subject. It is apparent upon the face of the accounts that the profits of the business, whatever they were, all went to the benefit of Fish. Lightner got nothing. The court in no way attempted to ascertain and apportion the profits; and yet this was a

proceeding essential to any just settlement between the parties. Apparently the profits were considerable. It is averred in the petition that Fish's means at the commencement of the partnership were quite limited, and that fact is set out as the inducement to the contract then made. It was for that reason that Lightner bought and held the property in his own name and under his own control, giving Fish an opportunity to acquire a moiety of it from the anticipated profits of the proposed business. Fish embarked in the enterprise, and appears to have been prosperous. By the contract, he was to give his time and services exclusively to the firm and its interests. He alleges that he did so. He conducted the business, and with success, as it would seem; for in sixteen months he found himself in a condition to hold the firm-property, or a moiety of it, in his own name. In this short time his pecuniary circumstances had entirely changed. All the facts of the case indicate that this increment of means resulted from the profits of the firm-business, in which Lightner was equally interested with himself. The contract between them expressly provided that the partnership should date and take effect from and after the 15th day of March, 1860. Its whole structure shows that there was to be a mutual participation in the profits of the business from the outset. This important question in regard to the profits was wholly overlooked by the Probate Court, and has never been adjusted. Until that is done, it is impossible to determine the standing of the parties between themselves, or what may have been the result of their mutual dealings. To make a final decree in the present state of the accounts and proofs, vesting an undivided half of the title to the real estate in question in Fish, would be to take a step in the dark, which we are not inclined to do; nor do we discover any necessity for doing so.

Applications of this kind—petitions for a specific performance of a contract to convey land — are addressed to the sound and reasonable discretion of the court, which withholds or grants relief according to the circumstances of each particular case, when general rules and principles fail to furnish any exact measure of justice between the parties. (2 Sto. Eq. Jur. § 742.)

Under the existing circumstances of this case, we are neither disposed to affirm the decree nor dismiss the petition. As a measure more likely to result in justice to both parties, the judgment below will be reversed and the cause remanded for further proceedings in accordance with the views expressed in this opinion. It may turn out, upon an adjustment of the profit and loss account, and a full settlement of the partnership affairs, that the plaintiff may be entitled to a decree as prayed for, but that does not yet appear.

The judgment is therefore reversed and the cause remanded. The other judges concur.