In Re CARRIE MILLER PEPER, Executrix of Estate of CHARLES G. PEPER, Appellant, v. CHRISTIAN P. BELL, Administrator De Bonis Non of Estate of FREDERICK C. PEPER.

In Banc, December 31, 1920.

1. **ADMINISTRATION: Commissions: Refusal to Accept Distribution.** A distributee cannot defeat the administrator's commission on the amount of money ordered by the court before final settlement to be distributed to her, by an arbitrary refusal to accept the money or other personal property so ordered to be distributed. Where the probate court, before final settlement, but at the third annual settlement and after all debts had been paid, made an order for partial distribution and allowed the administrator his statutory commission on the fund so ordered to be distributed, and one distributee refused to accept her distributive share, whereupon, in pursuance to instructions of the court, her share of the stocks and money was deposited in a safety-deposit box for safe-keeping under the joint custody and control of the administrator and his surety, and remained in said box until after the administrator's death, when it was accepted and turned over to the distributee, she cannot have the allowance surcharged and the amount of commission upon her share allowed against his estate in favor of the administrator de bonis non, on the theory that she never actually received her distributive share from the administrator during his lifetime.

2. ———: **Order of Distribution: Final As to Commissions.** An order of partial distribution of assets, made before final settlement, carries with it the further incidental and statutory authority to allow to the administrator distributing the fund the commissions thereon allowed by law, and, if unappealed from, becomes a final judgment, not only as to the order to make distribution, but also as to the commissions allowed the administrator; and a contrary ruling by the Court of Appeals was in conflict with Pound v. Cassity, 166 Mo. l. c. 427.

3. ———: ———: **Acceptance of Commission: Estoppel.** Where the probate court, in its order for a partial distribution of assets, fixed the amount of commissions to be allowed thereon to the administrator and he accepted it, his estate should not be charged with such commissions so received in advance of final settlement; and a contrary ruling by the Court of Appeals contravened the spirit and legal principles of In re Bryan's Estate, 190 S. W. l. c. 585.

## *Certiorari.*

RECORD QUASHED.

*J. D. Johnson* for plaintiff.

(1) The order of distribution made by the probate court in case of Peper v. Bell became final and binding on the distributee, Caroline J. Peper, after the lapse of the term of the court at which the order was made. Sec. 246, R. S. 1909; Pound v. Cassity, 166 Mo. 419; Freeland v. Wilson, 18 Mo. 380; Kiernan v. Robertson, 116 Mo. App. 61. (2) The property constituting the said share of Caroline J. Peper in the Frederick C. Peper estate under said order of distribution was not subject to further distribution after the same was separated from the remaining property of the estate and placed in the custody of the administrator and the surety on his bond. Sec. 246, R. S. 1909; State to use v. Thornton, 56 Mo. 325; Richardson v. Cole, 160 Mo. 372; Pound v. Cassity, 166 Mo. 419; Clark v. Sinks, 144 Mo. 453; Vastine v. Dinans, 42 Mo. 269; State ex rel. v. Maston, 44 Mo. 308. (3) The decision of the St. Louis Court of Appeals in said case of Peper v. Bell conflicts with last con-

trolling decisions of this court. See: Statutes and decisions cited under Point 2. Said decision by the St. Louis Court of Appeals is in conflict with the before-mentioned controlling decisions of this court, notwithstanding the difference existing between the facts in the two sets of cases. State ex rel. v. Reynolds, 265 Mo. 93; State ex rel. v. Reynolds, 218 S. W. 337; State ex rel. v. Reynolds, 214 S. W. 121; State ex rel. v. Reynolds, 213 S. W. 804; State ex rel. v. Reynolds, 216 S. W. 773; State ex rel. v. Ellison, 256 Mo. 644; State ex rel. v. Ellison, 268 Mo. 238; State ex rel. v. Ellison, 223 S. W. 671.

*George B. Webster* for respondent.

(1) To justify quashing of the record of a court of appeals it must appear that its opinion, in a case so similar in fact as to require application of the same law, conflicts with a ruling of this court. Its decision of a new case cannot be quashed, even though this court would rule to the contrary as an original proposition. State ex rel. Wabash Ry. v. Ellison, 204 S. W. 396; State ex rel. Arel v. Farrington, 197 S. W. 912; State ex rel. Com. Tr. Co. v. Reynolds, 213 S. W. 806. (2) The decision of the St. Louis Court of Appeals here challenged does not conflict with the rulings of this court in any of the cases cited by the petitioner. None of the latter presented the same issues, nor did any of them disclose facts similar to the decided case. (a) Pound v. Cassity, 166 Mo. 419, and the cases cited with it, merely hold that an order of distribution is conclusive when it becomes final, both on heirs and executors and administrators. That rule of law was not disputed in the Court of Appeals, nor did the case there present any facts to which that rule could be applied. Nothing in the opinion of the Court of Appeals conflicts with that doctrine. (b) The order of partial distribution here in question was not conclusive on the question of the right of the original administrator to commissions on the share of Caroline J. Peper, because it was not within the scope of the inquiry of the

probate court on an application for such an order. 2 Black on Judgments (2 Ed.), secs. 611, 617; Ridgley v. Stillwell, 27 Mo. 128; Fish v. Lightner, 44 Mo. 268; Baumhoff v. Railroad, 205 Mo. 264; Gym. Soc. v. Hagerman, 232 Mo. 693. (c) Such cases as State v. Thornton, 55 Mo. 325, and Richardson v. Cole, 160 Mo. 372, hold only that in certain circumstances administration is unnecessary. No ruling to the contrary was made by the Court of Appeals and no such circumstances are presented in this case.

GRAVES, J.—*Certiorari* to the St. Louis Court of Appeals. The opinion of that court says:

"As there is no controversy between counsel as to the facts, we adopt appellant's statement.

"This cause originated in the probate court of the City of St. Louis, and arose out of that court sustaining exceptions to the settlement made by Carrie Miller Peper, as executrix of Charles G. Peper, deceased, who, at the time of his death, was administrator of the estate of Frederick C. Peper, deceased, with Christian P. Bell, as administrator *de bonis non* of said last mentioned estate, up to the date of Charles G. Peper's death. The probate court sustained the exceptions to said settlement, and surcharged the Charles G. Peper estate with the amount of commissions which had been previously allowed to said Charles G. Peper by said St. Louis Probate Court in the settlement he made during his lifetime, as administrator of the said Frederick C. Peper estate.

"Carrie M. Peper, as said executrix of the Charles G. Peper estate, appealed from said judgment of the probate court to the St. Louis Circuit Court. The latter court tried the case *de novo,* principally on an agreed statement of facts, and rendered a judgment in favor of said Christian P. Bell, as administrator *de bonis non* of the estate of said Frederick C. Peper, and against Carrie Miller Peper, executrix of the said estate of Charles G. Peper, deceased, and the American Surety Company of New York as surety on the appeal bond, in the sum of

$3,481.24, from which judgment Carrie M. Peper, as executrix, appealed in due course to this court.

"The particular facts bearing on the question raised for decision by this court are the following:

"The St. Louis Probate Court, at its June term, 1915, which was more than one year after the publication of notice of the grant of letters of administration to said Charles G. Peper, and after all claims and demands had been allowed against the said administration estate and paid, made an order therein, directing said administrator to make partial distribution to the heirs of said Frederick C. Peper in the aggregate sum of $241,485.21 of the personal assets belonging to said estate, consisting of shares of stock in certain corporations and cash.

"Under that order the share of Caroline J. Peper, a sister heir-at-law of said Frederick C. Peper, consisted of specified shares of stock aggregating the actual value of $57,298.75 and $53.99 in cash, or a total of $57,352.74.

"In the same order the court expressly allowed to the administrator, and authorized him to pay himself, out of the personal assets remaining in his hands, compensation as administrator, five per cent. commissions on the sum distributed by said order, which allowance totaled the sum of $12,074.26, and included commissions on said distributive share of said Caroline J. Peper.

"All of the heirs excepting said Caroline J. Peper accepted their shares under said order. At the December term, 1915, of said probate court, Charles G. Peper filed his third semi-annual settlement as administrator of said Frederick C. Peper estate; which settlement was duly approved by the court, and the administrator took credit therein for the entire $241,485.21 ordered to be distributed as aforesaid, which included said share of Caroline J. Peper, and also took credit for the $12,074.26 commissions, in accordance with said order of distribution, which left in the administrator's hands other personal assets of the estate of the total inventoried value of $93,587.03.

"On the same day the third semi-annual settlement was filed and approved by the probate court, said administrator also filed a petition in that court, verified by affidavit, showing to the court that said Caroline J. Peper had been tendered, but had refused to accept and receipt for, her said distributive share of the estate; that the administrator had arranged to place the securities and cash constituting said share 'in a safe-deposit box, subject to the joint control of the American Surety Company of New York and himself until said Caroline J. Peper accepts and receipts for same,'—and praying the court to reduce his administrator's bond from $400,000, the amount of the same at that time, to $20,000. The probate court sustained the petition and made an order reducing the bond to said sum of $20,000.

"With respect to the depositing of said securities and cash, the agreed statement of facts in the case contains this admission: ·

" 'Thereafter, under instructions of the judge of the probate court of the City of St. Louis, the said distributive share of said Caroline J. Peper was set aside and deposited in a place of safe-keeping under the joint custody and control of said Charles G. Peper, as administrator, and the American Surety Company of New York, assurety on his bond, and so remained until the day of his (Charles G. Peper's) death.'

"The record does not disclose just when Charles G. Peper died; but his executrix, Carrie M. Peper, filed her settlement as such executrix in the St. Louis Probate Court at the September term, 1916, thereof, with Christian P. Bell as administrator *de bonis non* of Frederick C. Peper, in which settlement she charged her testator, as administrator of said Frederick C. Peper's estate, with the said balance of $93,587.03, as shown by his third semi-annual settlement made and approved by and at the December term, 1915, of said court. Christian P. Bell, as administrator *de bonis non* of said Frederick C. Peper's estate, filed exceptions to that settlement, alleging that the said Charles G. Peper, as administrator of the

Frederick C. Peper estate, was not entitled to the commission of five per cent on said distributive share of Caroline J. Peper, nor to some other commissions he had taken credit for, because he had not 'actually distributed' the assets. Said exceptions were sustained by the probate court, and the appellant here was ordered by that court to surchange her settlement account accordingly.

"In addition to the foregoing facts, all of which were developed at the trial in the St. Louis Circuit Court, it is admitted by the agreed statement of facts that after Christian P. Bell was appointed administrator *de bonis non* of Frederick C. Peper's estate, in the place of Charles G. Peper, deceased, he 'reduced to his possession the aforesaid distributive share of the said Caroline J. Peper, without giving any receipt therefor to Carrie Miller Peper, executrix' of Charles G. Peper, and retained custody of the same until February 28, 1917, when he delivered said securities to Caroline J. Peper, who receipted to him for the same.

"The agreed statement of facts further provides 'that if the court finds as a matter of law that the account of Carrie Miller Peper, executrix of the estate of Charles G. Peper, deceased administrator of the estate of F. C. Peper, deceased, should be surcharged, as contended for by the respondent, that the amount for which the said Carrie Miller Peper, executrix of the estate of Charles G. Peper, deceased administrator of the estate of F. C. Peper, deceased, is liable, is the commission on the distributive share of Caroline J. Peper, amounting to $3,866.63, and an additional sum of $614.61, the same being commissions for which Charles G. Peper took credit' in said third semi-annual settlement.

"It does not appear specifically whether Christian P. Bell has charged or will charge the Frederick C. Peper estate five per cent commission on said distributive share of Caroline J. Peper, to-wit, $57,352.74, as aforesaid; but if Charles G. Peper was not entitled to said commission, then Christian P. Bell, his successor

and administrator *de bonis non* of the Frederick C. Peper estate, was or is entitled to the same. Therefore, practically the only question or controversy here is, which one of the two administrators is entitled to said commissions?

"The foregoing facts present two questions: (1) Whether that part of the order of partial distribution made by the probate court at the June term, 1915, allowing Charles G. Peper the five per cent commission on the distributive share of Caroline J. Peper, was a final judgment on such question? If so, that would settle the mater, inasmuch as it is admitted there was no appeal taken from said order and judgment. And (2) under the facts heretofore stated was Charles G. Peper, as a matter of law, entitled to the commission on the share of Caroline J. Peper, he not having actually distributed the fund to her, because of the fact that she refused to receive it?"

The St. Louis Court of Appeals held:

"As to the effect of the order of partial distribution made at the June term, 1915. This order was based on Section 246, Revised Statutes 1909, which provides that, on a showing that there is sufficient money to satisfy all demands against the estate, the court shall order the payment of legacies and the distribution of shares. By virtue of Section 289 of the statutes an appeal could be taken from the order of partial distribution made by authority of Section 246. An appeal not having been perfected within the time required by law, the order became a final judgment as to the rights of the distributees to their respective shares. [Sec. 251, R. S. 1909; Freeland v. Wilson, 18 Mo. 380; Pound v. Cassity, 166 Mo. 419.]

"However, in addition to making the partial distribution, the order in this case went further and allowed the administrator five per cent commission on the amounts to be distributed. As to the effect and scope of this part of the order, we do not think the order was a final judgment as to such matter, as it was not the time

or place to settle the matter of the compensation of the administrator by Section 229 of the statutes the question of the compensation of the administrator is adjudicated at the time a settlement is made, and under the decisions hereinafter referred to such matter does not become finally adjudicated until after final settlement unappealed from.

"And by the construction given by our courts to Section 289 an appeal does not lie from an annual settlement of an executor, but only from a final settlement. An annual settlement has none of the attributes of a final judgment and is not conclusive on any one. [Picot v. Biddle's Admr., 35 Mo. 29; Baker v. Rinkle's Exr., 41 Mo. 391; State to use v. Hoster, 61 Mo. 544; In re Davis, 62 Mo. 450; North v. Priest, 81 Mo. 561; In re Annual Settlement of Barnes, 43 Mo. App. 295.]

"The judgment of partial distribution was conclusive only as to such matters as were necessarily involved in the application for the order and came within the purview of Section 246 of the statute which authorized the order. [2 Black on Judgments (2 Ed.), secs. 611-617; Fish v. Lightner, 44 Mo. 268; Baumhoff v. Railroad, 205 Mo. l. c. 264, 104 S. W. 5; North St. Louis Gym. Society v. Hagerman, 232 Mo. 693, 135 S. W. 42; Sparhawk v. Buell's Admr., 9 Vermont, 41.]

"It appears that the administrator, Charles G. Peper, at the December term, 1915, filed a settlement in the estate and took credit for the commissions referred to, but this did not adjudicate finally his right to the commissions as it was an annual settlement and could not be appealed from. The commissions may, and frequently are, allowed at the time of making annual settlements, but as was said by this court In re Annual Settlement of Barnes, supra, an appeal taken from such allowance in an annual settlement would be premature. Such matter of allowance is carried over and can be expected to an final settlement.

"It follows that the right of Charles G. Peper to the commissions in controversy was not finally adjudi-

cated by the order of partial distribution made at the June term, 1915.

"On the second proposition involved as to the right of Charles G. Peper's estate to have the five per cent commission on the distributive share of Caroline G. Peper, we must rule against appellant, and this by reason of the construction placed on Section 229 of the statutes by this court in Estate of Garrison, 77 Mo. App. 333, and In re Peters, 128 Mo. App. 666, l. c. 672, 107. S. W. 406. This distributive share under the facts was never . actually disbursed and paid out by Charles G. Peper to the distributee Caroline J. Peper. True, the share was ordered paid to her by the order of partial distribution at the June term, 1915, and it may be conceded for argument sake that the effect of this order was to place the equitable title to said share in Caroline J. Peper and for which she could have maintained a suit direct against the administrator or upon his bond upon refusal to pay, as contended by appellant, still the share was not actually paid to her by the administrator because she refused to accept it, and until it was in fact actually paid he was not entitled to charge a commission thereon.

"Under the admitted facts this distributive share of Caroline J. Peper was set aside under the instructions of the probate court and deposited in a place of safekeeping under the control and custody of the administrator, Chas. G. Peper, and the surety on his bond, and remained there until after his death. This did not amount to a disbursement of the share to Caroline G. Peper so as to entitle the administrator, Chas. G. Peper, to the five per cent commission on said share.

"After referring to the construction placed on Section 222, Revised Statutes 1889, now Section 239 of the Revision of 1909, by the Supreme Court in Hawkins v. Cunningham, 67 Mo. l. c. 418; Hitchcock v. Mosher, 106 Mo. l. c. 582, this court, in Garrison v. Trust Co., 77 Mo. App. l. c. 338, says: 'From reason, as well as on the authority of the cases cited above, we hold that the

five per cent commission allowed administrators for their services is not earned, until the sum on which it is claimed has been fully administered; that is, rightfully paid out in the due course of administration to creditors or distributees of the estate.' To the same effect is In re Estate of Boothe, 38 Mo. App. 456.

"It follows that the commissioner recommends that the judgment be affirmed."

The judgment was affirmed as per the recommendation of Commissioner Biggs. Such are the found facts and law of the St. Louis Court of Appeals. These rulings are said to be opposed to our rulings.

I.   From the facts detailed by the Court of Appeals, it appears that the probate court made an order of partial distribution at the June term, 1915, of said court. This was specifically permitted by Section 246, Revised Statutes 1909. By Section 289, Revised Statutes 1909, the distributee was given the right of appeal, but no such appeal was taken within the time allowed by law. By Section 229, Revised Statutes 1909, the administrator is allowed "as full compensation for their services and trouble a commission of five per cent on *personal property* and on money arising from the sale of real estate." In this case we have the order of partial distribution duly made. We have the tender to Caroline Peper of the property coming to her under the order. We have then her refusal to receipt therefor, and a subsequent order of the court to the then administrator and bondsman to place such property in a safety-deposit box, to await the receipt of Caroline Peper. Following this, we have the probate court approving the third annual settlement, and the commission allowed to Charles G. Peper in the partial order of distribution. It should be clear that a distributee cannot defeat the administrator's right to commission allowed, by an arbitrary refusal to receive the distribution ordered. But in this case it does appear that after the death of Chas. G. Peper, this distributee did receive this dis-

*Commissions.*

tribution.    It is not clear just how the successor to Charles G. Peper, one Christian P. Bell, administrator *de bonis non,* became possessed of the property, so as to deliver to Caroline Peper.

It is conceded by the Court of Appeals that as Caroline Peper did not, within the statutory time, appeal from the order of partial distribution, such order became a final judgment.    They so say in their opinion, and cite in support thereof Section 251, Revised Statutes 1909, Freeland v. Wilson, 18 Mo. 380, and Pound v. Cassity, 166 Mo. 419.

We do not perceive the relevancy of the statute cited, but the two cases cited establish the doctrine that the probate court has the power to order partial distribution, and unless appealed from such order is final. In fact, the Court of Appeals not only concedes this fact (Section 246 so authorized it), but they further concede that prior to the death of Charles G. Peper, the administrator, the time for appeal had lapsed, and the judgment was final as against Caroline Peper, so far as the order of distribution is concerned.    This order of distribution also ordered the payment of five per cent to the administrator, for making the distribution.    This portion of the order the Court of Appeals says was not final, and upon this point permit a surcharge of the deceased administrator's account.    In other words, the facts recited by the Court of Appeals show that there was a valid subsisting order of partial distribution; that the administrator faithfully performed his part of the order, by tendering the distributive share, and yet he and his estate should not be allowed the commission duly earned by him.    Of this question in the next paragraph.

II.    On the latter question the Court of Appeals thus reasons:    (1) that the portion of the order of partial distribution relating to the commission, was beyond the granted powers claimed in Section 246, supra;    (2) that such order was made in an annual settlement, which has none of the attributes of a final judgment; and (3)

**Final Judgment.** that such judgment was not conclusive (being unappealed from) except so far as it referred to the partial distribution. In other words, the court says that although in "any settlement" the probate court may order partial distribution, and if this order is not appealed from by the distributee, yet such order is not final on the allowance to the administrator. To make the matter plainer, a probate court finds that $241,000 of an estate can be safely distributed, together with the statutory commission of five per cent, and makes such an order. Such order is not appealed from and becomes final. The court, in the opinion says the order of distribution is final, but, that the order as to commission is not final, and herein beats the administrator, who collected, preserved and paid out the funds, out of the statutory fees. This on the theory that this portion of the order was not within the scope of Section 246, supra. We are cited, in the opinion, to Fish v. Lightner, 44 Mo. 268; Baumhoff v. Railroad, 205 Mo. l. c. 264, and North St. Louis Gym. Soc. v. Hagerman, 232 Mo. 693, neither of which touch the point here. These cases go to the general question that the doctrine of *res adjudicata* does not reach things not included in, or authorized to be included in, the judgment plead in bar.

In this case the probate court had the statutory authority (a matter conceded under Section 246) to make a partial order of distribution. That authority carried with it the further incidental and statutory authority to allow the administrator distributing the funds not to exceed five per cent. Under Pound v. Cassity, 166 Mo. l. c. 427, the order as a whole became final. In this the Court of Appeals thwart our rule.

III. In spirit, this ruling of the St. Louis Court of Appeals conflicts with In re Bryan's Estate, 190 S. W. l. c. 585. In this case prior to final settlement the executor and the beneficiary agreed upon the value of the **Estoppel.** items, and further agreed upon the statutory commission of five per cent. The items were

not turned over in the lifetime of the executor, although such executor had gotten the commission. We held that the executor's estate should not be charged with the commissions received in advance of final settlement. In the instant case, the court fixed the commission under the law, and the administrator had appropriated it, as had the executor in Bryan's estate, supra. In the one case the parties did under the law, and within the law, just what the court here did in its order of partial distribution. In principle there is no distinction, and it is conflict of legal principles we seek upon *certiorari,* rather than "gray mule" cases. So for this further conflict the record cannot stand. It is therefore ordered that the record of the St. Louis Court of Appeals be quashed and for naught held. All concur; *Williams, J.,* in paragraph 3 and the result.