STATE OF MISSOURI at the relation of A. FRANK HOWE, Relator, v. A. EVAN HUGHES, Judge of the Probate Court for the County of St. Louis.—123 S. W. (2d) 105.

Division Two, December 20, 1938.

*Joseph T. Davis, Lawrence C. Kingsland, Robert Hensley* and *Bruce A. Campbell* for relator.

*Ethan A. H. Shepley* and *Frank Coffman* for respondent.

COOLEY, C.—This is an original proceeding for mandamus, instituted upon the petition of relator, A. Frank Howe, against the respondent, A. Evan Hughes, judge of the Probate Court of St. Louis County, to compel respondent to set aside an order of partial distribution made in an estate being administered in his court and to recall the property distributed pursuant to the order. Our alternative writ issued, commanding respondent to do those things or show cause why he should not do so. He has filed here a combined motion to quash the alternative writ and return thereto. Relator. filed reply to the return. The motion to quash was by this court ordered taken with the case and will be so considered and disposed of.

From the pleadings the following uncontroverted facts appear:

Respondent is judge of the Probate Court of St. Louis County. In process of administration in his court is the estate of Minnie Morey Howard (whom we shall call the deceased), who died testate about February ——, 1937. She left a large estate. By her will she named her son and only heir (and beneficiary), Clarence H. Howard, Jr., sole executor, to act without bond. He qualified, without being required to give bond and has since been so acting. Letters of administration with will annexed were issued to him upon probate of the will, February ——, 1937. In April, 1937, relator herein filed in the probate court a claim for allowance against the estate of deceased for four million dollars ''or in such amount as may be

determined.'' (This will be more fully explained hereafter.) At the same time relator filed a motion to remove the executor. October 14, 1937, the executor filed motion to dismiss and strike from the files relator's said claim and his motion to remove the executor. After hearing arguments and considering briefs submitted by the parties, the probate court on April 18, 1938, sustained the executor's motion and dismissed relator's said claim. On April 20, 1938, relator duly perfected an appeal from the order or judgment of the probate court dismissing his claim to the Circuit Court of St. Louis County, where said appeal was pending and undetermined when this proceeding was instituted.

On April 20, 1938, the executor filed in the probate court his first report or settlement, and at the same time filed and presented a petition asking the court to order partial distribution of certain assets of the estate. The probate court, on the same day, made and entered of record orders approving the settlement and granting the application for partial distribution. Said order of partial distribution authorized the executor to distribute to Clarence H. Howard, Jr. (who is the sole distributee as well as executor) $565,000 of U. S. Government bonds and Treasury certificates and $500,000, at par, of General Steel Castings Corporation bonds, a total of $1,065,000 of securities. The mandamus sought herein is to compel respondent to set aside said order of partial distribution and order said distributee to return said $1,065,000 of securities to the estate, to be there held until relator's $4,000,000 claim is finally adjudicated. Said first settlement filed by the executor was not intended as a final settlement and was not so treated. It showed assets aggregating $4,336,712 then in the hands of the executor. Relator alleges that the Federal estate tax and the State inheritance tax and administration expenses, attorney fees, etc., will yet have to be paid out of the estate and that said partial distribution depletes the assets to such an extent that there remains an amount insufficient to pay his claim should it ultimately be established.

The pleadings, including exhibits therein referred to and made part thereof, show that the deceased, in her lifetime, was a stockholder of the Commonwealth Steel Company, a corporation. As such she received, upon distribution of assets of that corporation, approximately, $5,000,000. Relator's claim is founded upon a decree and judgment (interlocutory) of the United States District Court in and for the Southern District of Illinois, made and entered September 11, 1930, in an action in equity instituted in that court by relator against said Commonwealth Steel Company and others. Neither deceased nor, since her death, her executor, as such, were parties to that suit. The purpose of the suit was to establish relator's rights

in certain patents in the name of and which for a long time had been used by said Steel Company, and in the earnings from the use of the patents, upon the theory that the Steel Company held the patents under a parol trust. The decree in that suit, not appealed from, determined that relator was, in fact, owner of the patents and entitled to recover the reasonable value thereof, if any (one of them had expired), and the earnings thereof resulting to the Steel Company, less the value, if any, of "shop rights" of the Steel Company thereunder. The Federal Court enjoined all of the defendants from assigning or transferring the patents; and "from distributing or attempting to distribute . . . any of the funds *remaining* (italics ours) in the hands of said corporation or anyone acting under or for said corporation or its stockholders until after an accounting herein has been made, and the interest, if any, of the plaintiff, in the assets or property of said corporation shall have become fixed and satisfied." The decree further provided "that plaintiff (relator) have a lien against all such assets and property in the possession and control of said committee (a stockholders' committee) to secure the payment of the amount or amounts awarded plaintiff, if any, under the accounting hereinabove ordered, adjudged and decreed, and said lien shall continue until such final decree shall have become fixed and satisfied."

About a year prior to said decree the Commonwealth Steel Company had distributed all of its assets among its stockholders, including deceased (whence she received the approximately $5,000,000 above referred to), except $1,700,000 in cash, which remained in the hands of the committee when said decree was rendered, and upon which relator was decreed a lien.

In and by said decree the Federal Court referred the cause to a Master in Chancery "to take, state and report an account between the plaintiff and the defendant, Commonwealth Steel Company," to determine the reasonable value, if any, of the patents, the value, if any, of said corporation's shoprights thereunder and the "earnings or values" if any, resulting to said corporation from the use of said patents; and, lastly, the court "ordered, adjudged and decreed that jurisdiction of the cause is reserved for such orders and decrees as the Court of Equity may require until the entry of a final decree herein."

The above mentioned suit in the Federal Court is still pending. The accounting has not been completed and, so far as shown, no report has been made by the Master. No final judgment or decree has been entered. The $1,700,000 in cash, upon which relator has a lien, is still in the hands of the stockholders' committee.

In his above mentioned claim filed in the probate court relator alleges that while the accounting in the Federal Court has not been completed it has advanced sufficiently to show that he "is and will be" entitled to recover from the defendants in said equity suit and the stockholders of the Commonwealth Steel Company a sum in excess of $5,500,000,—(a statement in the nature of a conclusion, the facts showing the stage of the accounting not being stated), and that by reason of said Federal decree and accounting he has and will have against the estate of deceased, as a former stockholder of the Commonwealth Steel Company, and as a distributee of the assets of her deceased husband, Clarence H. Howard, Sr., and one of his executors a claim in the sum of $4,000,000. The claim further alleges, in substance, that deceased and her said husband, in July, 1929, owned at least 30,000 shares of the stock of said Steel Company, being more than one-third of its capital stock; that deceased's estate now owns all that stock or its equivalent in cash and preferred stock of the General Steel Castings Corporation; that about August, 1929, Clarence H. Howard, Sr. (deceased's husband and the father of Clarence H. Howard, Jr.), and two others, as a committee for all the stockholders of the Commonwealth Steel Company, sold the "property and assets" of said Steel Company to the General Steel Castings Corporation for over $35,000,000, $10,000,000 thereof being paid in 6 per cent preferred stock of the Castings Corporation and the balance in cash; that the committee retained $2,587,397.26 for expenses and liabilities of the Steel Company, and authorized distribution of the remainder to the stockholders of the Steel Company on the basis of $225 cash and one share of preferred stock of the Castings Corporation for each share of Commonwealth Steel Company Stock, all distributions being subject to the following express agreement: "The acceptance of any distributions from the committee shall constitute an agreement on the part of the receiver thereof that he is responsible for the debts, liabilities and obligations of the committee to the extent of the distribution received by him;" that deceased and her husband so received as their distributive shares $6,750,000 in cash and $3,000,000 in preferred stock of said Castings Corporation, a total of $9,750,000; that at the time of said Federal Court decree said stockholders' committee (a substitution had been made for Clarence H. Howard, Sr., deceased) "retained and now holds, under lien of the court, approximately $1,700,000.00, which said sum is insufficient by at least $4,000,000.00 to pay the amount to which this claimant is entitled under and by virtue of the above mentioned decree and judgment of the court"—(the Federal Court.) The claim contains further allegations showing knowledge on the part of deceased and Clarence H. Howard, Jr., of the above men-

tioned facts relative to the sale of the Steel Company's assets and distribution of the proceeds to stockholders, and of the institution and progress of relator's suit in the Federal Court.

We have thus at some length indicated the nature of relator's claim in the probate court because of the reasons given by respondent for dismissing it and striking it from the files, and making the order of partial distribution complained of.

Respondent's motion to quash states a number of grounds of which we specifically mention Nos. 4, 5 and 6, as they are referred to in the return. They are in substance: 4, that the alternative writ and the petition for mandamus thereto attached and made part thereof show that relator's claim "is of purely equitable cognizance and not subject to the jurisdiction" of the probate court or of respondent, judge thereof; 5, that said writ and petition show that relator's claim is based on proceedings to which neither deceased in her lifetime nor her executor, as such, since her death, was a party defendant, and that no debtor-creditor relationship ever existed or now exists between relator and deceased; 6, that said writ and petition show that relator's claim is based on proceedings now pending in the Federal Court, in equity, to which neither deceased, individually, in her lifetime nor her executor, as such, since her death, was a party, and upon the interlocutory judgment and decree of said court wherein said court expressly reserved jurisdiction of the cause for such orders and decrees as that court (in equity) may require until final judgment shall there be entered, and "that such (interlocutory) judgment and decree is not and never was such a claim or demand against the estate of Minnie Morey Howard, deceased, as is subject to classification and allowance under the laws of Missouri."

The motion to quash also alleges that said writ and petition show that relator can be afforded adequate relief by appeal; that the facts stated in said writ and petition are not sufficient to entitle relator to relief by mandamus; that said writ and petition show that relator has appealed from the order and judgment dismissing his claim; and, in effect, that the writ and petition show that in dismissing said claim and refusing to set aside the order of distribution respondent acted in his judicial capacity.

As we have indicated, respondent filed a combined motion to quash and return. It is a single document with the heading "Motion to quash and return to alternative writ of mandamus." First there appears the motion, which we have summarized. Following that respondent says "Without waving his motion to quash the said alternative writ of mandamus heretofore issued in this cause, but expressly insisting thereon, the respondent for his answer and return to said alternative writ says:" Then follows the return,

which is long, as is the petition for the writ which is incorporated in and made part of the alternative writ. The return admits many of the facts pleaded by relator, and denies others.

Relator, in his brief, insists that by filing a return respondent waived his motion to quash and that said motion cannot now be considered, even though it and the return were combined. It is argued that such motion to quash performs the same function as a demurrer in an ordinary civil action and, like a demurrer, admits all well pleaded facts. It is not necessary in this case to determine the technical question of pleading thus suggested. See State ex inf. Barker ex rel. Kansas City v. Kansas City Gas Company, 254 Mo. 515, 163 S. W. 854, where, in a similar situation, the matter was discussed. Respondent here was commanded by the alternative writ to do certain things or show cause why he should not do them. In showing cause he said in his *return* that he had done certain acts (dismissing relator's claim, which claim had been fully set forth in the writ) for reasons stated in certain paragraphs of his motion, thus by reference making at least those paragraphs of his motion a part of his return. As was said in State ex inf. v. K. C. Gas Company, supra, 254 Mo. l. c. 528, 163 S. W. 855, ''The practice has grown up in this court of raising questions of law side by side with issues of fact in the return in mandamus.'' The issues, herein, both of law and fact, sufficiently appear from the pleadings without recourse to the motion to quash. While some allegations of the writ are denied by the return, the case is presented to us on the uncontroverted facts. Relator says in his brief: ''Other facts are presented by the pleadings, but they are controverted. None of these controversial facts, however, are necessary for the determination of the questions presented in this mandamus proceeding and they need not be considered.'' The facts necessary to a decision being uncontroverted there is no need for separate hearings on questions of law and fact. We ordered that the motion to quash be taken and considered with the case and the parties have briefed the legal questions involved accordingly. In this situation, as was said in State ex inf. v. K. C. Gas Company, supra, 254 Mo. l. c. 529, 163 S. W. 856, ''We are of opinion that we need not rule in the instant case on the one narrow technical question whether a motion to quash the writ can live in the face of a return raising only issues of fact.''

On the uncontroverted facts of this case we are of opinion that our peremptory writ should not issue. We think relator had an adequate remedy by appeal, which he should have invoked, and also that respondent's acts and rulings complained of were in their nature judicial rather than purely ministerial and not subject to control by mandamus.

■ Creditors may appeal from orders of distribution, Section 284, Revised Statutes 1929 (Mo. Stat. Ann., p. 177), including orders of partial distribution. [State ex rel. Peper v. Bell, 286 Mo. 126, 226 S. W. 550 (styled State ex rel. Peper v. Reynolds et al., Judges, in 226 S. W. 550).] ■ It is well settled that mandamus cannot be used to perform the office of an appeal or writ of error. In State ex rel. Spring River Electric Power Company v. Thurman, 232 Mo. 130, 165, 132 S. W. 1157, we read: "It is a general rule that a mandamus will not issue unless the party asking it has a clear right and no other specific legal remedy. It will not be granted to bring under review the proceedings of an inferior court on the ground of error, and therefore it will be refused in a case in which a writ of error will lie, or where the party can be redressed by appeal." [See, to like effect, State ex rel. Tate v. Sevier, 334 Mo. 771, 68 S. W. (2d) 50.] In State ex rel. v. Thurman, supra, the relator sought, by mandamus, to compel the respondent, judge of the circuit court, to set aside the dismissal of a cause, which the circuit court had dismissed for the relator's noncompliance with an order to pay certain costs, and to reinstate the cause. This court held that the relator had an adequate remedy by appeal or writ of error and denied the peremptory writ. [See also, State ex rel. South St. Joseph Town Co. v. Mosman, Circuit Judge, 112 Mo. App. 540, 87 S. W. 75, cited with approval in State ex rel. v. Thurman, supra.] In that case, also, the circuit court had dismissed a cause and the relator sought by mandamus to compel the setting aside of the order of dismissal and reinstatement of the cause. The appellate court held that it was not a case where the respondent had refused to entertain jurisdiction, but that, on the contrary, he had assumed authority to dispose of the motion to dismiss, had heard and acted upon it and had entered a final judgment from which an appeal could have been prosecuted, and that if he had erred the remedy was by appeal, which the court said was adequate. [To like effect see State ex rel. Lamport v. Robinson, Circuit Judge, 257 Mo. 584, 591, 165 S. W. 997.]

■ In the instant case it is argued that appeal is not an adequate remedy. It is suggested that the executor is not under bond, that the court's order of distribution did not require that, as distributee, he give a refunding bond and that the remedy by appeal is slow and would entail delay in settlement of the estate, etc., whereas the remedy by mandamus would be more speedy and efficacious. There is no allegation or intimation in the pleadings that said distributee is or is likely to become insolvent so as to be unable to respond should he ultimately be called upon to return the property now ordered to be distributed to him. We need not go into the

question of whether or not he could be called upon to do so hereafter, assuming that the distribution has been made pursuant to the court's order. As to an appeal being a slower process by which to obtain redress, we cannot concede that that, of itself, renders appeal inadequate and justifies resort to mandamus. Appeal or writ of error is the procedure provided by law to obtain review of and redress from judicial errors,—which brings us to consideration of the next question, the nature and character of the act of respondent in question.

We think that in making the order of partial distribution respondent was performing a judicial rather than a purely ministerial function. Ordering distribution of estates administered therein is of course, generally speaking, within the jurisdiction of the probate court. In doing so the court must examine the accounts of the administrator or executor and determine the amount to be distributed and the amount to be paid over to each distributee. In State ex rel. Gott v. Fidelity & Deposit Co. of Baltimore, Md., 317 Mo. 1078, 298 S. W. 83, the probate court (on final settlement), made an order that the administrator pay over the balance in his hands "to the parties entitled thereto." Speaking of that order this court said, 317 Mo. l. c. 1087, 298 S. W. l. c. 87:

"Under the facts of this case, the direction in the order that the administrator pay over the balance in his hands *to the parties entitled thereto* is, as the appellant contends, either indefinite and meaningless, or else an attempt to invest the administrator with *judicial discretion to determine the proper distributees and the amount of their interests*. In either case it would be void." (Citing authorities. Latter italics ours in the instant case.)

In ordering distribution, questions concerning advancements may be litigated and determined, State ex rel. Gott case, supra, and advancements made by the deceased to distributees may be adjusted and deducted from their distributive shares so as to equalize the distribution of the estate among those entitled thereto. [In re Estate of Elliott, 98 Mo. 379, 11 S. W. 739; Brown v. Glover, 158 Mo. App. 396, 138 S. W. 105.] The indebtedness of a legatee or distributee to the estate may be ascertained and offset against his distributive share. [State ex rel. Gott case, supra; In re Estate of George H. Lietman; Winkler, Appellant, v. Lietman, 149 Mo. 112, 50 S. W. 307, 73 Am. St. Rep. 374.] In the Elliott case, supra, 98 Mo. l. c. 384, 11 S. W. l. c. 741, we said:

"As heretofore said by this court, our probate courts were established with extensive powers and jurisdiction for the purpose of doing everything necessary to the full and final administration of estates, including the power to make distribution to the parties entitled thereto."

And further, l. c. 385, "The power to make distribution includes the power to take account of all matters necessary to be considered in the ascertainment of the shares . . ." And see, as to the duty of a probate court in ordering distribution, 24 Corpus Juris, page 519, section 1383.

Orders of distribution made by the probate court are so far of the nature of judgments that, if not appealed from, they become final as to the rights of the distributees, State ex rel. Peper v. Bell, supra (partial distribution), and are not subject to collateral attack. [Gorg v. Rutherford (Mo. App.), 31 S. W. (2d) 585; Harter v. Petty, 266 Mo. 296, 181 S. W. 39.]

In State ex rel. Thompson v. Nortoni, 269 Mo. 563, 191 S. W. 429, the probate court had refused letters of administration to the widow of the deceased, on the ground that she had waived her right to administer by an antenuptial contract entered into with the deceased. But for such antenuptial contract her right to administer was clear. She brought mandamus proceedings in the St. Louis Court of Appeals to compel the probate judge to revoke his appointment of the public administrator and to appoint her as administratrix. Said court granted the writ, directing said probate judge to vacate his order appointing the public administrator and to appoint her. The case was certified to this court, which quashed the record of the Court of Appeals, holding that the question of whether or not the widow by contract or otherwise had waived her marital right to administer was a judicial question for the determination of the probate court, and "When it acted its judgment was not for review upon mandamus. Judicial acts, completed as here, are not the subjects of mandamus proceedings." [See also, question of claimed renunciation of right to administer, State ex rel. Abercrombie v. Holtcamp, 267 Mo. 412, 185 S. W. 201.]

Other examples might be given but we think the foregoing sufficiently illustrate that in making orders of distribution the probate court acts in a judicial, rather than a purely ministerial capacity. It seems to us that whether a certain act is ministerial or judicial depends upon the nature and character of the act itself and upon the things necessarily involved therein rather than upon what the applicant may claim for the act. [State ex rel. Heller v. Thornhill, 174 Mo. App. 469, 472, 160 S. W. 558.] It is well settled that, while an inferior tribunal may be compelled by mandamus to *act;* it cannot, where judgment and discretion are to be exercised, be thus compelled to act *in a particular way.* In the instant case respondent did not *refuse to act.* He did act. He exercised his authority and jurisdiction to order a partial distribution. In making the order of distribution he determined that relator's claim was not a legal

demand which the probate court had jurisdiction to entertain, allow and classify, and that there appeared to be ample funds in the estate to pay all legal demands and to warrant the order of partial distribution,—as in State ex rel. Thompson v. Nortoni, supra, the probate court had judicially determined that the widow, by her antenuptial contract, had waived her (otherwise statutory) right to administer. If he erred in so deciding, relator's remedy was by appeal, not mandamus. There is a wide difference between an absence of jurisdiction to decide a case and a mistake of law and facts made in the decision of a case of which the court has lawful jurisdiction. [Harter v. Petty, supra. And see, also, State ex rel. Tate v. Sevier, supra; State ex rel. v. Mosman, supra.] In State ex rel. Tate v. Sevier, supra, the respondent, as circuit judge, had refused to issue an alternative writ of mandamus commanding the Secretary of State to receive and file a referendum petition or show cause why he should not do so. The respondent had denied the alternative writ on the ground that the legislative enactment sought to be referred was not subject to the referendum. Our writ of mandamus was sought to compel him to set aside his order refusing the writ, to reinstate the cause on his docket and to issue the alternative writ to the Secretary of State as prayed by the petitioner. We denied the peremptory writ, saying, in concluding the discussion of the case,

"We are not holding whether the petition filed in the circuit court did or did not state a cause for the issuance of an alternative writ of mandamus. What we do hold is that the circuit court had jurisdiction to determine that question, the determination of which is a judicial act which cannot be controlled by mandamus. Where, as here, a circuit court has jurisdiction of the subject-matter and of the parties, mandamus will not go to compel a particular decision, or to review a judicial decision made in the exercise of lawful jurisdiction. Petitioner's remedy, if any, lies in other directions."

In the instant case we do not wish to prejudge the question whether respondent was right or wrong in dismissing relator's claim in the probate court,—a question now pending on appeal in another court. In doing that he was clearly acting in a judicial capacity and we think he acted in such capacity and within his jurisdiction in making the order of distribution complained of and refusing to set it aside.

It is argued that respondent acted capriciously and abused his discretion, in that he gave no consideration to the matter of ordering distribution but made the order upon the petition of the executor, without consideration or investigation and without even knowing the contents of said petition at the time of making such order. There are allegations to that effect in the petition for mandamus incorporated in the alternative writ, but they are denied in the return and

are not proved. It is also argued that the order of distribution was made without notice to relator. Section 242, Revised Statutes 1929 (Mo. Stat. Ann., p. 160), requires notice to distributees, not applying therefor, before an order of distribution may be made (except at the first semi-annual settlement or the final settlement), but we find no such statutory requirement of notice to creditors. We do not believe the failure to give relator notice before making the order of distribution deprived the probate court of jurisdiction to make it, and relator knew of the making of the order on the same day on which it was made, though a few hours later in the day. He had ample time and opportunity to appeal. Indeed he knew the order of distribution had been made when he perfected his appeal from the dismissal of his claim.

In State ex rel. Crow v. Booneville Bridge Co., 206 Mo. 74, 134, 103 S. W. 1052, this court said, quoting from High on Extraordinary Legal Remedies (3 Ed.), section 9:

"The writ of mandamus being justly regarded as one of the highest writs known to our system of jurisprudence, it issues only where there is a clear and specific right to be enforced, or a duty which ought to be and can be performed, and where there is no other specific and adequate legal remedy. The right which it is sought to protect must therefore be clearly established, and the writ is never granted in doubtful cases. . . . It follows also, from the important position which this writ occupies as a remedial process, as well as from its nature as an extraordinary remedy, that the exercise of the jurisdiction rests, to a considerable extent, in the sound discretion of the court, subject always to the well-settled principles which have been established by the courts, or fixed by legislative enactment. . . ."

It is our conclusion that the alternative writ issued herein should be quashed and the peremptory writ prayed for denied. It is so ordered. *Westhues* and *Bohling*, *CC.*, concur.

PER CURIAM: The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.